**MORTON v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 7006.**

Circuit Court of Appeals, Seventh Circuit.
Jan. 9, 1940.

Rehearing Denied Feb. 5, 1940.

Robert V. Jones, and Edward H. Stearns, both of Chicago, Ill., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Lee A. Jackson, J. P. Wenchel, and Charles E. Lowery, all of Washington, D. C., for respondent.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

Petitioner did not include in his 1933 income tax return the income derived from certain trusts which he then and now contends was not taxable to him. The Commissioner included such income and assessed a tax against him therefor. On appeal to the Board of Tax Appeals the ruling of the Commissioner on these items was affirmed, and a deficiency tax liability of $17,-728.21 was adjudged against him. Petitioner seeks a reversal of this adjudication.

EVANS, Circuit Judge.

The facts are fortunately not in serious dispute. They deal with three trusts created by the petitioner, and one executed by his father to which interest and dividend-bearing securities of large value were transferred. The controversy before us is over who has the obligation of paying the tax on the income received in 1933 from the income of these trust funds—the petitioner or petitioner's father, his daughter, or his wife.

As will be later seen, the provisions of the trust agreements and the action of the grantors, and in one case where the petitioner was beneficiary, his action as beneficiary, are determinative of our decision.

The parties stipulated to all the facts as to certain issues, and the Board of Tax Appeals accepted such stipulated facts as part of its findings. Additional evidence was offered and considered by the Board which made findings appropriately covering the other issues.

On January 3, 1933, petitioner executed a trust agreement known as No. 30,121. The Chicago Title & Trust Co. was named trustee therein. This trust was endowed with securities, the income from which was to be accumulated during the continuance of the trust. Grantor reserved the right to terminate the trust by giving a memorandum to the trustee of his intention so to do in one year and another memorandum in the second year in which latter year the trust would terminate. *Trustee was given the right to terminate the trust at any time.* The trust also provided for its termination upon the death of the grantor. Upon termination of the trust the accumulated income and all investments of such income were to be transferred by trustee to grantor's daughter, Suzette Morton. All the remainder of said trust, consisting of original endowments, was to be returned to the grantor or, if he were not then alive, to certain persons named in the trust instrument.

On December 31, 1929, petitioner executed a trust agreement known as No. 24,299, wherein Chicago Title & Trust Co. was named the trustee. He transferred to said trustee certain securities. The provisions material to the questions before us, were similar to those found in trust No. 30,121.

On December 31, 1928, Joy Morton, father of petitioner, executed a trust agreement known as No. 22,146, wherein Chicago Title & Trust Co. was trustee. The agreement provided that the net income of the trust was to be accumulated until the termination date. When the trust was terminated, trustee was to convey the principal and undisposed of income of the trust to the administrator or executor of the Joy Morton estate. These provisions, however, were made subject to sections 2 and 3 of Article 5 of the trust agreement, which provided as follows:

"2. The Donor may, at any time, by a memorandum in writing signed by the Donor and delivered to the Trustee during the lifetime of the Donor, modify and amend this Trust Agreement so that: (a) all or any part of the net income of the trust herein created shall be paid to Jean Morton Cudahy, a daughter of the Donor and/or Sterling Morton, son of the Donor, and/or Margaret Morton, wife of the Donor, and/or their heirs and/or testamentary ap-

pointees and/or any one or more of the foregoing persons; or (b) all or any part of the net income of the trust herein created shall be accumulated for the benefit of any one or more of the persons above in clause (a) of this paragraph referred to; or (c) all or any part of the principal and undistributed income of the trust herein created shall be distributed by the Trustee on the termination, as herein provided, of the trust herein created, to any one or more of the persons above in clause (a) of this paragraph named or referred to; or (d) the trust herein created and/or as modified and amended in accordance with the terms of this paragraph shall continue for a period of twenty-one (21) years after the death of the Donor or for any period less than twenty-one (21) years.

"3. Except as above in this Article V hereof provided, the trust herein created shall be irrevocable."

On January 26, 1931, Joy Morton, under the powers reserved in the trust agreement No. 22,146, modified the same to provide that one-third of the income of the trust should be paid to petitioner, one-third to his daughter, and one-third to his wife. It was further modified so as to provide that the trust should not terminate until twenty-one years after the death of the donor.

On January 3, 1933, petitioner and Chicago Title & Trust Co. executed another agreement whereby petitioner created a trust No. 30,122 similar to that appearing in trust No. 30,121. By this agreement petitioner transferred to Chicago Title & Trust Co. all his interest derived from and held under Joy Morton trust No. 22,146.

The trustee was given large power as to control and management of the income and the manner in which it was to be invested. This last trust was to terminate on the death of petitioner. Reserved, however, was the grantor's power to terminate the trust in any succeeding year after notice of his intention. Upon its termination the trustee was to transfer all interest in the Joy Morton trust, No. 22,146, to the grantor. The trustee could terminate this trust at any time. It was also provided by this trust agreement, No. 30,122, that the income of said trust shall be accumulated by said trustee during the continuation of the trust and all such accumulation should be a part of this estate. It was also provided that the grantor reserved the power to direct the trustee to make any investments desirable to the grantor and to make loans with or without security, which the grantor should direct, to such persons as the grantor should designate, the trustee not to be responsible for the validity or value of any investments or loans so made or liable for any loss thereon. All the accumulated income of said trust on its termination was to be transferred to petitioner's wife.

Respondent contends that the income of the trusts created by petitioner, Nos. 24,299, 31,121, and 30,122, is taxable to petitioner as the income from revocable trusts, pursuant to section 166 of the Revenue Act of 1932, 26 U.S.C.A. § 166, because the corpus of the trust would revert to petitioner upon termination of the trusts. He also contends that the trustee who had power to terminate the trust was not a person having a substantial adverse interest in the disposition of the corpus. He further contends that the income of trust No. 30,122, is taxable to petitioner because the income of that trust represented income to which petitioner was entitled pursuant to the Joy Morton trust, No. 22,146, which after modification became an irrevocable trust. The income could not escape taxation by virtue of the tax avoidance assignment by him to trust No. 30,122.

Petitioner contends that the trustee who had in each trust the power to terminate the trust and thereby revest the corpus of the trust, was a person having "a substantial adverse interest" therein and therefore the trusts were not revocable. He further urges that the interest of petitioner under Joy Morton trust No. 22,146, was validly assigned by him to trust No. 30,122. He also contends that the income received by trust No. 30,122 from the Joy Morton trust No. 22,146, was not taxable to petitioner since it represented a part of the income of the Joy Morton trust, No. 22,146, all of which was taxable to the grantor thereof.

Respondent's contention as to the income received from the trust No. 30,122 (which arose from the Joy Morton trust, No. 22,-146) is this: The Joy Morton trust which was revocable when executed became irrevocable when the grantor once exercised his reserved right to modify the same. This action exhausted the grantor's right to again modify it and the trust became irrevocable. He also points to the fact that after the modification the net income was payable and was paid by the trustee to the parties designated in the modification.

The two sharply controverted issues may be stated thus: (1) Is the income from the

trusts created by Sterling Morton taxable to him where it appears that the trust indentures gave to the Chicago Title & Trust Co. as trustee, the power to terminate the trusts at any time? Or stated differently, does such a trustee have "a substantial adverse interest" within the meaning of section 166[1] of the Revenue Act of 1932 so as to render the trust an irrevocable one within the terms of said statute? (2) Did the revocable trust created by taxpayer's father, Joy Morton, become irrevocable after he once exercised the reserved power to modify or change the trust?

(1) While no case precisely in point has been decided by the courts, a few are of interest for their intimations. In Reinecke v. Smith, 289 U.S. 172, 53 S.Ct. 570, 572, 77 L.Ed. 1109, decided in April, 1933, there were three trustees, one a banking company. The trust could be revoked by the grantor and either trustee. The taxpayer argued that the trustee was to be considered as a beneficiary of the trust, as the phrase is used in the statute. The Supreme Court said:

"The unambiguous phraseology of the Act precludes the suggested construction. A trustee is not subsumed under the designation beneficiary. Both words have a common and accepted meaning * * *.

"A settlor who at every moment retains the power to repossess the corpus and enjoy the income has such a measure of control as justifies the imposition of the tax upon him. * * * In approaching the decision of the question before us it is to be borne in mind that the trustee is not a trustee of the power of revocation and owes no duty to the beneficiary to resist alteration or revocation of the trust. * * * This case must be viewed, therefore, as if the reserved right of revocation had been vested jointly in the grantor and a stranger to the trust."

 It is, we think, fairly inferable that the term "substantial adverse interest" was not intended to include such colorable interests as a commercial trustee. Such a corporate paid trustee has an interest, financial and real, it is true, but is it such a *substantial adverse interest* as those words, inserted by Congress to prevent tax avoidances, were meant to comprehend? Although the fee here might be $700 or thereabouts per annum per trust, which can not be considered a negligible amount, nevertheless, it is not substantial when we consider the size of the income or the corpus of the trust involved. Obviously the word "substantial" is a relative term to be measured and determined by the facts of each case. Not only must the adverse interest be substantial but it must be adverse. The lack of adversity of the character of the trustee's interest in this case is of vital importance. The report of the Congressional Committee upon the 1932 bill clearly indicates the purpose of the amendment and the importance of emphasizing both of the two words "substantial" and "adverse."

"In an attempt to avoid this section, the practice has been adopted by some grantors of reserving power to revest title to the trust corpus in conjunction with a beneficiary; in such cases the grantor has substantially the same control as if he alone had power to revoke the trust. *While it is, of course, yet to be established that such device accomplishes its purpose, it is considered expedient to make it clear that in any of these cases the income shall be taxed to the grantor.* The House bill made the grantor of a trust taxable upon the income of any part of the corpus of the trust where the power to revest in the grantor title to such part of the corpus was in the grantor alone or was in the grantor in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus. Your committee has extended the scope of this provision so as to include, as well, the cases where the power to revest title to any part of the corpus is held, either alone or in conjunction with the grantor, by a person not having a substantial adverse interest in such part of the corpus or in the income therefrom."

---

1 "§ 166. Revocable Trusts [Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. § 166].

"Where at any time during the taxable year the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust [for such taxable year] shall be included in computing the net income of the grantor."

■ Moreover, the Congress may make its own definition of a revocable trust. In enacting section 166 of the Revenue Act of 1932, it was dealing with the subject of taxation and designating the party who was to pay the tax on an income from a trust. It could use its own terms and define them. Consequently a trust might be deemed revocable for some purposes and not fall within the meaning Congress has given it, in defining who shall pay tax on an income derived from the trust.

■ What the Congress was endeavoring to accomplish was to avoid the escape of taxes " 'by anticipatory arrangements and contracts * * * by which the fruits are attributed to a different tree from that on which they grew.' Lucas v. Earl, 281 U.S. 111, 115 "50 S.Ct. 241, 74 L. Ed. 731." Griffiths v. Helvering, 308 U.S. 355, 60 S.Ct. 277, 278, 84 L.Ed. ——, decided December 18, 1939.

The provision in these trust agreements whereby the commercial corporate trustee, whose sole duty was apparently to invest and reinvest the corpus of the trust and pay the income to the beneficiaries, might also revoke the trust, at once attracts our attention,—a red light not to be passed indifferently.

Here we have a case where a father creates and endows a trust for the benefit of his daughter. He executes another for the benefit of his wife. He selects a commercial trust company as trustee, and gives it the usual power to invest and reinvest the funds. He adds the significant clause which gives the trustee the power to terminate the trust. We regard it as significant because its presence invites speculation as to its purpose. We can find no explanation for its existence save on the theory that it was to be used to help grantor avoid or reduce his income tax. In vain have we searched for another reason for its existence.

It appears that form was given to a plan which involved no real danger of revocation from a trustee whose interest lay in the continuance of the trust.

■ Tax avoidance efforts are generally directed to one of two activities: (a) including the taxable income in the return of one whose other income is low; (b) arranging receipts and disbursements so that large net income in one year will not be followed by smaller or no profit in succeeding years. Efforts to equalize yearly revenue are not, or should not be, condemned. The income tax laws are not evaded when one conducts his purchases and sales of securities with the existence and application of tax laws in mind. It is common knowledge that all who pay income taxes do much figuring and conduct their businesses, either large or small, on a basis that will call for the least amount of income tax payments. It is taxpayer's action, not his motives, which is determinative of tax liability.

In the case before us, petitioner's counsel endeavored to provide for tax reduction by transferring certain income to his wife and to his daughter, neither of whom had as large an income as he had.

Our task is to ascertain whether the objective was accomplished. Our conclusion is that the efforts, although ingenious, were futile. Petitioner tried to give the trust the appearance, for tax purposes, of an irrevocable trust, yet keeping control of it. His failure was due to his inability to both give and keep the funds at one and the same time. In other words, failure was inevitable because one cannot create a trust which is both revocable and irrevocable.

■ We conclude that in these trusts the interest of the Chicago Title & Trust Co. as trustee was not a "substantial adverse interest."

(2) While we gravely doubt whether a beneficiary named in one trust can assign the income derived therefrom to a trust, the income of which is payable to either his wife or to his daughter or to both, so as to avoid income tax liability, yet there are added grounds for the Board's conclusion in this case, which seem to us sound and unassailable.

Granting for the moment that the Joy Morton Trust was revocable when executed, it became irrevocable by the grantor's exercise of his reserved right to amend it. After it became irrevocable, petitioner was liable for the taxes on the income (which includes the 1932 income derived therefrom) which was paid to him.

On this phase of the case, liability turns upon the effect of Joy Morton's single exercise of his right to modify the terms of the trust. The Board held, on the authority of Day v. Commissioner, 3 Cir., 92 F. 2d 179 that his right to amend was exhausted by a single exercise of the power. Day v. Commissioner, supra, was supported by and based on Hidell v. Girard Life Insurance Company, Fed.Cas.No. 6464, C.C.Penn., 1879.

■ We are not inclined to accept the rule and do not hold that a single exercise of a general right to modify a trust exhausts the reserved right where there are no restrictions, limitations or other qualifications to be found in the trust agreement which restricts the grantor's exercise of the right to modify to a single instance.

It seems to us that an unlimited and unqualified reserved right to modify any of the terms of a trust carries with it the right of the grantor to modify and remodify indefinitely. The case of Hintz v. Hintz, 7 Cir., 78 F.2d 432, wherein we applied this rule to an insurance policy is some authority therefor, although not directly in point.

There is considerable difference between the right to change a beneficiary in an insurance policy payable in the distant future, and the right to modify a trust effective at once.

Our conclusion is that the right to modify the trust continues indefinitely and may be repeatedly exercised under a reservation clause which is general and unlimited in its terms. In each case, however, the right, and its extent, must be found in and determined by the language of the reservation, the language of the trust. Other provisions of the trust, if any, which throw light upon the intention of the grantor may, of course, be considered.

■ In the case before us it is important that we first ascertain just what right was reserved. Ordinarily, the reservation of power of revocation contemplates the right of the grantor to return the income to himself. The trust under consideration, neither, contemplated nor gave such authority. The donor's power to modify and amend the trust agreement is limited to changing the beneficiaries to his son, the petitioner, grantor's daughter, and his wife, and to provide for annual or deferred payment of the income and for the possible continuation of such trust for twenty-one years after the death of the donor. The third paragraph provides expressly, that except as herein provided the trust was "to be irrevocable."

■ It is the reservation of this trust,— not the general power to modify a trust in any and all respects, that is before us. Our conclusion is that the particular power of reservation in the Joy Morton trust was exhausted when he changed the proportion his beneficiaries were to receive and made it effective for twenty-one years after his death.

Another reason for this same conclusion is to be found in the fact that the 1932 income from the Joy Morton trust was actually paid to the beneficiaries named in said trust as modified.

The order of the Board of Tax Appeals is affirmed.