**LOEB v. COMMISSIONER OF INTERNAL REVENUE (two cases).**

**Nos. 292, 293.**

Circuit Court of Appeals, Second Circuit.

July 20, 1940.

Arthur B. Hyman, of New York City, for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to the Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

These petitions present the question whether income of a trust established by the petitioners is taxable to them under the provisions of section 167(a) (2) of the Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int.Rev.Code, § 167(a) (2). In each act the section reads as follows: "(a) Where any part of the income of a trust * * * (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; * * * then such part of the income of the trust shall be included in computing the net income of the grantor."

On January 16, 1929, the petitioners irrevocably transferred securities to their father in trust. The trust instrument provided that the net income at the end of each year should be distributed by the father, in his absolute discretion, to one or more of the named beneficiaries. These were the grantors' mother, their sister Margaret, their brother John, themselves, and the surviving descendants of any of the named beneficiaries, except the mother, who should die during the continuance of the trust. The discretion confided in the father in respect to distributing income among the beneficiaries was not to be exercised by a successor trustee. The trust was to con-

tinue during the father's life. Upon his death the principal was to be paid over to Margaret, John and the two grantors in equal shares; and if any of them was dead, the share the deceased would have had, if living, was to go to his then living descendants.

The grantors' motives in creating this trust appear from the testimony. Prior to 1918 the father had created a trust for the benefit of his four children. He and his wife were the trustees. A share of the corpus was distributable to each child in the discretion of the trustees after such child reached majority. In 1928 the father told Carl, Jr., and Henry that the shares of Margaret and John had been distributed to them several years previously, and thereafter the remaining trust corpus had increased in value to such an extent that the shares left for Carl, Jr., and Henry were much larger than the shares of Margaret and John; so he requested the two younger boys to create a trust of their shares for the benefit of their mother, sister, older brother and themselves. They were then of age. They received their shares of the old trust and used that property to create the trust of January 16, 1929.

This trust continued through 1935 and during that period the distributions of annual income were as follows: in 1929, nearly $40,000 to John and nearly $80,000 each to Carl, Jr., and Henry; in 1930, $40,-560.90 to the mother; in 1931, none; in 1932, $15,362 to the mother; in 1933, none; in 1934, $24,892.22 to the mother, $20,000 to Margaret and $5,000 to Henry; in 1935, $52,550.92 each to the mother, Margaret and Henry.

Margaret and John were married and lived apart from their parents. Each had a substantial estate created by their father. The mother also had an estate created by him which produced income of about $6,-000 in each of the years 1933 and 1934. The father was possessed of large means and maintained his family upon a scale of living consistent therewith. Excluding capital gains and losses, his income in 1933 was more than $200,000 and in 1934 more than $150,000. During those years he paid an annual rental for summer and winter homes of $17,000. The living and household expenses of the father and mother exceeded $25,000 annually in addition to the rent. The money received by the mother from her separate estate and from the distributions of trust income was used by her to defray all household and personal expenses except rent.

In 1933 the income of the trust exceeded $65,000 but capital losses were sustained in a larger amount. In 1934 the trust income was some $66,500, with no capital losses. In determining the deficiencies of the petitioners, the commissioner included one-half of the trust income as income of each petitioner, less, however, in the case of Henry A. Loeb the sum of $5,000 actually distributed to him in the year 1934 and reported by him in his return for that year. The Board sustained the commissioner's determination.

The underlying question to be answered in determining the taxability of the petitioners is whether their father, the trustee, had "a substantial adverse interest in the disposition" of any part of the trust income. Unless he had, section 167(a) (2) requires the trust income to be included in computing the net income of the grantors. They urge that the trustee was under a legal duty to support his wife; it was to his advantage to pay trust income to her rather than to the grantors in order to relieve himself of the burden of providing such support; and therefore, he had a substantial interest adverse to the grantors in the disposition of the trust income, all of which might have been and part of which was distributed to his wife. The argument is not without persuasive force but, on the whole, we think that the statute contemplates by the phrase "a substantial adverse interest" a direct interest in the trust income rather than an interest derived through a possible beneficiary who may, but is not legally required to, use the income in a manner advantageous to the trustee. In the case of Caspersen v. Commissioner, 40 B.T.A. 758, upon which the petitioners strongly rely, the trust instrument itself provided that the trustee might in his discretion accumulate the trust income and use it for the support of his minor son. See, also, Shiverick v. Commissioner, 37 B.T.A. 454. In the case at bar, however, the wife received the trust income allotted to her without incurring any obligation to use it so as to relieve her husband of his marital duty of support. He had a large income of his own, and there is no ground for an inference that the advantage he might possibly derive from allotting trust income to his wife would outweigh a request by the

grantors to allot it to them in any given year. In 1929 he did allot them two-thirds of it. The statute presupposes that a trustee clothed with discretion to dispose of the income will be amenable to the wishes of the grantor of a trust, as he is likely to be, particularly in family trusts. That is the basis for treating the trust income as the grantor's, if the disposition of it lies in the discretion of any person who has not "a substantial adverse interest". This means, in our opinion, an interest sufficiently direct and adverse to rebut the presumption that the grantor can control in fact the exercise of discretion by such person. We are not convinced that the Board was wrong in holding in the cases at bar that the trustee did not have such an interest.

■ The petitioners further contend that it is implicit in the reasons which induced creation of the trust that the father would distribute the trust income in a manner more nearly to equalize the shares of the beneficiaries in the whole family fortune and that the grantors would actually have no control over his exercise of discretion. Quite likely this may be so. But the issue is not whether in fact the grantor of the trust can control the discretion of the person who may dispose of the income. The statutory presumption that he can is overthrown only by proof that such person has "a substantial adverse interest".

■ It is also urged that the fact that the trustee distributed the income to others prevents treating it as income of the grantors. Such a construction would render the section wholly futile. The very purpose of the statute is to tax to the settlor income which he does not actually receive. Nor is the statute so construed unconstitutional. Although this aspect of section 167(a). (2) has not been before the Supreme Court, the validity of similar statutory provisions has been sustained. See Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Reinecke v. Smith, 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109; Burnet v. Wells, 289 U. S. 670, 53 S.Ct. 761, 77 L.Ed. 1439.

■ Finally, it is contended that error was committed in attributing trust income to Carl M. Loeb, Jr., for the year 1933 for the reason that all trust income for that year was extinguished by capital losses. This issue was apparently not raised below and therefore is not open on appeal. Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511; Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796. But if it were, the contention would fail. There is nothing in the trust instrument which authorizes the reduction of distributable income by the amount of capital losses.

Decisions affirmed.