OPINION. Kern, Judge: Respondent has made alternative and inconsistent determinations, first, that the petitioner received income in 1939 and 1940 consisting of dividends paid on the stock involved here after it was transferred to the trusts created by him, or, second, that he realized capital gain by reason of the transfers of the stock to the trusts. Considering first the contention that the dividends received by the trusts constituted taxable income to petitioner, respondent relies on sections 22 (a), 166, and 167 of the Internal Revenue Code. It is respondent’s view that the dividends are taxable to petitioner under the broad sweep of section 22 (a) under the doctrine of constructive receipt and because the beneficiaries of ther trusts were his sons, the trusts were of short duration, and he had previously pledged the stock first, with other and marketable collateral to secure the payment of a debt, and later to another creditor under an agreement by the terms of which his personal liability on the debt owed to this creditor was extinguished in consideration of the pledge of the stock and his agreement to pay to this creditor 75 percent of the dividends thereafter paid on the pledged shares. Respondent regards this contract as constituting in legal effect an assignment of 75 percent of the income from the stock, and the later transfer of the stock itself to the trusts as a mere assignment of the remaining 25 percent. The applicability of section 166 is urged because the stock was pledged for the Pick debt, which respondent views as equivalent to a power to revest, and respondent also urges the applicability of section 167 (a) (2) because of the discretionary power of trustees having no adverse interest to use the income to discharge legal obligations of the petitioner. Petitioner strenuously urges his theory that, since he was not personally liable on the Adler debt, payments made thereon pursuant to the 1935 contract did not discharge any legal liability of his; and, since the stock when released from the lien of the debt belonged not to petitioner, but to the trusts, whatever economic benefits resulted from the payments accrued to the trusts alone, and not to petitioner; and that, therefore, the income applied to that use can not under any theory be taxed to him. We can not agree with the respondent’s contention that the 1935 contract amounted to a present assignment of future income, but we do agree that the dividends paid pursuant thereto are taxable as constructively received by petitioner. It is true, as petitioner claims, that he was not, after the execution of the 1935 contract, personally liable on his old debt, since that liability was specifically and effectively extinguished. But he secured his release from that liability by the expedient of assuming for his own benefit a new and different obligation — the obligation to pay over the stipulated percentage of the dividends to Adler. This obligation was to continue during the life of the contract, which expressly required that any transfer of the stock be made subject thereto. The transfers to the trusts involved here were in fact made specifically subject to the requirements of petitioner’s contract with Adler. The payments made to Adler out of the dividends after the transfer were therefore made at his direction in satisfaction of petitioner’s obligation, assumed for his own economic advantage. This is true not because the payments were credited to the old debt, but because they were made pursuant to and in satisfaction of a valid and existing contractual obligation of petitioner. Under this view of the facts, there can be little doubt that petitioner is taxable on the part of the income so applied. Petitioner argues that the trusts are properly taxable because they own the stock which produces the income and because they are the practical beneficiaries of the arrangement. It is true, of course, that title to the stock is in the trusts and also that ordinarily the income would belong to and be taxable to them. But the transfers here were made subject to the preexisting right of Adler arising out of his contract with petitioner to receive part of the dividends. The trusts, therefore, never at any time had any right to that income for their own unqualified use. The moment it came into their hands it was impressed with the requirements of the Adler contract. As to such amounts, the trusts were mere conduits through which they passed. See J. Gregory Driscoll, 3 T. C. 494. It is also true that the trusts would ultimately benefit to some indeterminate degree from the carrying out of the Adler contract. But that result accrues not by reason of the terms of the contract, but by reason of the wholly unrelated transactions of the gifts. It is an incidental and secondary effect of the payments made by reason of the contract. The primary advantage of the Adler contract, to secure which the obligations of the contract were undertaken, benefited Loeb himself, as we have seen. Since they were obligations of Loeb himself, undertaken primarily for his own economic advantage, the payments made pursuant thereto at his direction constitute income to him, notwithstanding the fact that the trusts derive some resultant benefits because of later gifts to them. There remains for our consideration that part of the income from the stock which was not required to be paid under the Adler contract. The trust instrument provides, as we have seen, that: * * * said Trustees may retain and accumulate the net income or may spend all or any part thereof for the reduction of liens or encumbrances against the trust estate * * *. Section 167 (a) (2) of the Internal Revenue Code provides that: Where any part of the income of a trust * * * may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; * * * then such part of the income of the trust shall be included in computing the net income of the grantor. It seems clear that that share of the dividends, roughly 25 percent, which was not required by the Adler contract to be paid on the Adler lien, might, in the discretion of the trustees, after payment of the trust expenses, be paid in reduction of either the Adler or the Pick lien. There is no dispute that petitioner remained personally liable on the Pick debt throughout the tax years and no contention that the trustees had any adverse interest in the distribution of the trust income. Any payment which they might thus have made on the Pick debt would have discharged petitioner’s obligation to that extent. The Adler contract constitutes no impediment to that use of that portion of the dividends. There seems to be no escape from the conclusion that petitioner is taxable, therefore, on the entire amount of the dividends, less the expenses of the trusts. In view of this conclusion it is unnecessary to enter into an extended discussion of the applicability of section 166, or to consider further the alternative contention advanced by respondent. Decision will be entered under Rule BO.