

KixMiller, Baar & Morris, Arnold R. Baar and Arthur R. Foss, all of Chicago, Ill., for Herbert A. Loeb.

Douglas W. McGregor, Asst. Atty. Gen., Sewall Key, Robert N. Anderson, Robert Koerner, and Melva M. Graney, Sp. Assts. to the Atty. Gen., and J. P. Wenchel and John W. Smith, Bureau of Internal Revenue, both of Washington, D. C., for C. I. R.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The Commissioner has imposed deficiency income taxes upon Herbert Loeb for the years 1939 and 1940, which the Tax Court has sustained in the amounts of $7,159.18 and $20,785.16, respectively.

The alleged deficiency grows out of the Commissioner's assertion that Loeb was taxable on $60,000 dividends, declared in the years in question,[1] upon ten thousand shares of Hillman Company stock, which Loeb had transferred, December 15, 1939, to two trusts, for the benefit respectively of his two adult sons. The transfer of this stock in trust was subject to a pre-existing contract and lien of one Max Adler as sole security for a $499,615.08 indebtedness

## LOEB v. COMMISSIONER OF INTERNAL REVENUE.

## COMMISSIONER OF INTERNAL REVENUE v. LOEB.

### Nos. 9082, 9083.

Circuit Court of Appeals, Seventh Circuit.
Dec. 20, 1946.

Rehearing Denied Feb. 5, 1947.

---

[1] $20,000 in 1939 and $40,000 in 1940.

of Loeb to him, and subject to the prior pledge of the stock to Pick & Co. (hereinafter called Pick) to secure Loeb's debt to it of $239,910.22 and of Loeb's associate's debt to Pick of $262,965.93.

The trustee named in said trusts had paid income tax on the dividends and Loeb had paid gift tax on the corpus of the trusts at the time of their creation.

*The Terms of the Trusts.* Loeb transferred five thousand shares of Hillman's, Inc. to each of two trusts, December 15, 1939, one for the benefit of his son, Herbert A. Loeb, Jr., and the other for the benefit of his son, Edward Loeb. The transfer in trust was "subject, however, to the existing pledge of said property for an indebtedness of the Grantor to George Pick & Company and subject also to the terms and provisions of the agreement dated January 12, 1935, made between Max Adler and the Grantor."

The trust instrument gave power to the trustees to "spend all or any part (of the net income * * * for the reduction of liens or encumbrances against the trust estate * * *."

During the ten year life of the trust the income might be paid to the beneficiary, and at the end of the term the trust was to terminate and the corpus and accumulated income would be paid to the beneficiary.

*The Terms of the Max Adler Contract.* The Adler contract, executed January 12, 1935, recited an existing indebtedness of $782,236.05; an assignment to Adler of two accounts, totaling $282,620.97, due Loeb, thereby reducing the existing debt to $499,615.08; a transfer of 1,026 shares of H-H Corporation stock (predecessor of Hillman) to Adler. The H-H stock was represented by two certificates, one for twenty-six shares, being in Loeb's possession, and one for the thousand shares, which it was recited by the agreement was pledged with Pick to secure a $239,910.22 debt to that company. The agreement also provided for an indorsement across its face of notice of the Adler agreement.

One of the important provisions of the Adler contract is paragraph 6 which provides that seventy-five per cent of all cash dividends declared upon the stock shall be paid to Adler in reduction of the debt "unless by reason of the receipt of said dividends and by reason of * * * salary or other compensation from H-H Corporation * * * (etc.) (treating said dividends and such compensation as the only income received by said Herbert A. Loeb) is in excess of * * * 25% of the aggregate amount of such income, in which case the percentage of said dividends payable to * * * Adler shall be reduced to the extent that such income tax * * * is in excess of * * * 25%. * * *" The agreement then provided for the return of a proportionate amount of the stock given as security upon reduction of the debt. Release of the stock also released dividends upon such stock where release was effected by payment out of funds other than dividends. If Adler made payments upon the Pick indebtedness, payments under the Adler contract were to apply first to the advances so made to Pick. Loeb reserved the right to vote the stock.

The agreement also provided "It is understood and agreed that said Max Adler accepts this contract and the agreements therein contained in full settlement of the indebtedness above described due him from said * * * Loeb, and hereby discharges him from any further personal liability therefor, said Max Adler accepting in full satisfaction of said indebtedness his right to receive the dividends from said stock * * *." If the entire debt was not paid out of dividends in a ten year period, a public sale was to be had of the stock and the proceeds applied to the debt.

*The Pick Pledge.*[2] Pick not only had the Hillman stock, involved in the instant trusts, on pledge, but had in addition seven thousand of other shares of Hillman stock, and listed and readily marketable stock in other companies, and Loeb claims Pick carried that indebtedness primarily upon Loeb's personal liability and upon the listed

---

[2] Tax Court found this debt was entirely paid by 1943, and the Hillman stock was delivered to the trustee under the Adler agreement.

stock, and not upon the Hillman stock. He had agreed in 1939 to pay Pick $25,000 per year on the indebtedness until the listed collateral equalled the balance, and he made three payments of $12,500 pursuant to such agreement. On December 31, 1939, the Pick indebtedness amounted to $176,244.35 and the listed collateral had a market value of $137,014.06; and a year later the debt amounted to $142,348.88 and the listed collateral had a value of $124,303.13.

The Tax Court held Loeb to be taxable on the entire $60,000 dividends declared on the trust stock (less trust expenses) on these theories: (1) as to the seventy-five percent of the dividends applicable to the Adler contract it held them taxable to Loeb on the theory that it was "constructively received" by him. The Tax Court said: "* * * petitioner * * * was not, after the * * * 1935 contract, personally liable on his old debt, * * *. But he secured his release from that liability by the expedient of assuming for his own benefit a new and different obligation— the obligation to pay over the stipulated percentage of the dividends to Adler. This obligation was to continue during the life of the contract which expressly required that any transfer of the stock be made subject thereto. The transfers to the trusts * * * were in fact made specifically subject to the requirements of petitioner's contract with Adler. The payments made to Adler out of the dividends after the transfer were therefore made at his direction in satisfaction of petitioner's obligation assumed for his own economic advantage. This is true not because the payments were credited to the old debt, but because they were made pursuant to and in satisfaction of a valid and existing contractual obligation of petitioner." (2) As to the twenty-five per cent of the dividends, the Tax Court held them taxable to Loeb because the trustees, not being substantially adverse parties, had the discretion of applying same to pay off the Pick or Adler liens, and thereby benefiting Loeb, (under Sec. 167(a) (2) of the Act, 26 U.S.C.A. Int.Rev.Code, § 167(a) (2).[3]

The issues presented are:

(1) Were seventy-five per cent of the dividends received by the trust taxable to the settlor Loeb because paid by the trustees to Adler pursuant to Loeb's contract liability to see that such percentage be so paid for ten years, which contract was made to extinguish Loeb's personal liability on a large indebtedness?

(2) Were twenty-five per cent of the said dividends taxable to Loeb because the trustees have the discretionary power to apply them in reduction of Loeb's indebtednesses?

(3) If these dividends be not taxable to Loeb, the Commissioner asks that the cause be remanded to the Tax Court that it may ascertain whether the transfer of the Hillman stock to the trust subject to the Adler agreement was an exchange giving rise to a taxable gain.

■ As to the twenty-five per cent of the dividends we accept without much worry, the correctness of the Tax Court's findings. The statute, Sec. 167 (a) (2) provides: "Where any part of the income of a trust— * * * (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; * * * then such part of the income of the trust shall be included in computing the net income of the grantor."

Taxpayer cites the remoteness of the possibility that the dividends would ever be used by the trustees to pay off the Pick or Adler loans, although the trust instrument provided "Said trustees may retain and accumulate the net income or may spend all or any part thereof for the reduction of liens or encumbrances against the real estate." Taxpayer points out that the Pick debt had substantial security in readily salable collateral, in addition to other

[3] "Where any part of the income of a trust * * * may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; * * * then such part of the income of the trust shall be included in computing the net income of the grantor."

Hillman stock, and Loeb had made the additional assurance to Pick that he would make regular payments in reduction of the debt, which agreement he had kept, so that there was no need for the trustees to fortify the trust corpus by making payments in reduction of the debt.

The case of Stuart v. Commissioner, 7 Cir., 124 F.2d 772, Helvering v. Stuart, reversed 317 U.S. 154, 164, 63 S.Ct. 140, 87 L.Ed. 154, relied on by taxpayer, does not hold to the contrary. It is not materially in point. In the instant case, the trustees had the power,—and the exercise of such power would be in accordance with the trust—to apply available income to the Pick debt, and that ends the matter. Even though the debt was amply secured by other collateral, there was authority in the trustee to so apply the dividends. Congress wrote the statute. Courts are powerless to soften its harsh or rigorous application.

■ The issue as to the payment of seventy-five per cent of the dividends turns on whether the trustees were thereby fulfilling any obligation of taxpayer, and the argument grows warmer. The taxpayer argues that it is obvious from an examination of the Adler contract that the parties were fulfilling no obligation to pay the Adler indebtedness—for the contract provided "It is understood and agreed that 75% of any and all cash dividends declared and paid upon such * * * shares of stock * * * shall be paid to said Max Adler * * *." Taxpayer says he assumed no obligation thereby—"that the agreement provided merely that the specified portion of the dividends 'shall be paid,' and prescribed in various ways how such payment might be enforced *without any act or participation by Loeb.*"

That argument we feel we must reject. When the contract provides that it is *agreed* that seventy-five percent of the dividends shall be paid to Adler, and the parties to the contract were Loeb and Adler, the inescapable inference is that Loeb agreed to pay over those dividends, or guaranteed the means whereby such diversion or assignment of dividends was to be effected. It was Loeb's duty to see that Adler received seventy-five percent of those dividends for the entire ten years,

and had he failed in that obligation, Adler would undoubtedly have had the right to enforce his contract right against Loeb.

As we read that contract, Loeb had a continuing duty to see that Adler received his share of the dividends. Some added support for this interpretation may be found in the succeeding paragraph of the contract which reads: "It is further agreed that upon payment *by said* * * * *Loeb* of any part of said indebtedness *from sources other than said dividends above mentioned,* * *."

Inasmuch as the first two issues have been disposed of in favor of the Commissioner it is unnecessary to pass upon the third one.

The decision of the Tax Court is affirmed.