GEORGE W. VREELAND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARGARET C. VREELAND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24941, 24942. Promulgated May 15, 1951.

*Charles H. Barnard, Esq.*, for the petitioners.
*James R. McGowan, Esq.*, for the respondent.

1044

#### OPINION.

Harron, *Judge:* Some of the facts material to this proceeding have been stipulated. Additional evidence was adduced through the testi-

mony of one of the trustees of the trust and from examination of the exhibits. The facts have been found from the entire record.

In 1931, the petitioner created a trust, the corpus of which consisted of real properties and securities in which the petitioner either owned a life estate or an outright interest. The trustees were instructed to collect and receive the rents, dividends, and interest from the properties comprising the corpus of the trust and to pay the expenses of administering the properties, including the interest on the mortgages of the real estate and commissions to the trustees. After the payment of the expenses in 1942 and 1943, the trust had remaining net income of $2,605.62 and $4,937.92, respectively. The issue in this proceeding is whether the above amounts are includible in the net income of the petitioner under section 167 (a)[1] of the Internal Revenue Code.[2]

It is clear from the trust agreement that after the payment of the expenses of administering the trust properties, the remaining income of the trust was to be used (1) to pay insurance premiums on petitioner's life, (2) to pay personal obligations of petitioner, and (3) to pay petitioner not more than $6,000 per year for her support and maintenance, with the provision that if in any year petitioner does not receive $6,000, the trustees may make up the balance in any succeeding year out of income of the trust. Thus, it is clear that the remaining income of the trust was to be used for the benefit of petitioner who was the grantor of the trust. Such income, therefore, is includible in petitioner's net income under section 167 (a) (2) and (3). Of the remaining income of $2,605.62 in 1942, $1,303.23 was used to pay the premiums on an insurance policy on petitioner's life, payable upon her death to her estate; and of the remaining income of $4,937.92 in 1943, $1,291.50 was similarly used. Subsection 3 of section 167(a) expressly provides that where any part of the income of a trust is used to pay the premiums on a policy of insurance on the life of the grantor, such part of the income of the trust shall be included in the grantor's net income. The amounts of $1,303.23 and $1,291.50 used to pay premiums on policies of insurance on petitioner's life during the years 1942 and 1943,

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor ; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor ; or

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23(o), relating to the so-called "charitable contribution" deduction) ;

then such part of the income of the trust shall be included in computing the net income of the grantor.

[2] The respondent has not sought to tax the income in question to petitioner under section 162(b), and no issue has been raised as to the applicability of that section.

respectively, are, therefore, includible in petitioner's net income for those years. See, also, *Burnet* v. *Wells*, 289 U. S. 670; *Arthur Stockstrom*, 3 T. C. 664.

After the payment of the premiums on the life insurance policy, the trust had remaining income of $1,302.39 in 1942 and $3,646.12 in 1943. These amounts are also includible in petitioner's net income under section 167 (a) (2), which provides that "where any part of the income of a trust * * * may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor * * * then such part of the income shall be included in computing the net income of the grantor." The income of the trust which remained after the payment of the life insurance premiums could have been distributed directly to petitioner under that provision of the declaration of trust which provided for the payment to petitioner of not more than $6,000 for her support and maintenance, or it could have been distributed indirectly to her through the payment by the trustees of her debts and obligations which were outstanding in 1942 and 1943. It is immaterial that only $179.79 was used by the trust to pay debts of petitioner in 1942 and that it retained $1,122.58 which it did not distribute to petitioner, and that in 1943 it distributed to petitioner only $600 of the $3,646.12 remaining after the payment of the life insurance premiums. Taxability of trust income to the grantor under section 167 (a) (2) turns on whether it might have been distributed to the grantor in the discretion of one lacking a substantial adverse interest, not whether it is actually distributed. *Oleta A. Ewald*, 2 T. C. 384, affd., 141 F. 2d 750; *Frease* v. *Commissioner*, 150 F. 2d 403; *Clifton B. Russell*, 5 T. C. 974; *Herbert A. Loeb*, 5 T. C. 1072, affd., 159 F 2d 549; see H. Rept. No. 871, 78th Cong., 1st Sess., p. 51 (1943). And a trustee is not a person having a substantial adverse interest within the meaning of the statute. *Reinecke* v. *Smith*, 289 U. S. 172; *Sterling Morton*, 38 B. T. A. 1283, affd. (C. A. 7), 109 F. 2d 47. The income in question, therefore, is properly includible in petitioner's net income for the years 1942 and 1943.

The petitioner makes the contention that "an involuntary, irrevocable trust, even though voluntary in form, should escape the provisions of Sec. 167." However, not only does the evidence indicate that the trust was voluntary[3] rather than involuntary, but neither the statute nor the decided cases make any such distinction as a basis for

---

[3] Petitioner's affidavit attached to the declaration of trust declares "I have voluntarily created the trust as therein set forth and declare the same to be my free act and deed." The fact that among the purposes of the trust was the payment of real estate taxes, interest, and fire insurance premiums on property of which petitioner was the life tenant in order to avoid charges of waste by the remaindermen does not make the trust involuntary. The payment of these obligations was the duty of the life tenant and the creation of a trust to perform the obligations of its grantor does not constitute the trust an involuntary one.

taxability or nontaxability. There was nothing to prevent the trustees from distributing the remaining income of the trust to petitioner. Such income, therefore, is properly includible in petitioner's net income.

The petitioner also contends that even if the income of the trust is includible in her net income under section 167 (a), the trust suffered a net operating loss in 1941 which, under the provisions of section 170, may be carried over to 1942 and 1943 to reduce the income of the trust which is includible in her income for those years. Assuming that the trust was engaged in a trade or business in 1941 from which it suffered a net operating loss, it does not follow that the income of the trust which was distributable for the benefit of petitioner in 1942 and 1943, and which, therefore, is includible in her net income, may be reduced by the carry-over to the later years of such loss.

Section 167 prescribes that the income of a trust shall be taxed to the grantor because of the interest which he has retained in such income. It differs from section 166 which bases taxation of the grantor on the interest which he has retained in the corpus of a trust and, in effect, disregards the creation of the trust. Section 166; Regs. 111, sec. 29.166–1 (c); *Everett D. Graff*, 40 B. T. A. 920, affd. (C. A. 7), 117 F. 2d 247. Under section 167, however, the trust remains as a separate entity, and its creation is not disregarded. Under section 167, the income of the trust which is distributable for his benefit is included in the income of the grantor because of the interest which he has retained in such income. Since the basis of taxation under section 167 is the interest which is retained by the grantor in the income of the trust, the grantor is "allowed those deductions with respect to such income as he would have been entitled to had such income been distributable currently to him." Regs. 111, section 29.167–1 (c). Manifestly, a net operating loss suffered by the trust in 1941 does not reduce the income of the trust which under the trust instrument is distributable to or may be used for the benefit of its grantor, the petitioner, in 1942 and 1943. The loss is the loss of the trust, which is not the taxpayer involved in this proceeding, and may be carried over to a future year only in the computation of the taxable net income of the trust under section 162. But the taxable income of the trust is not necessarily the same as the distributable income of the trust under the trust instrument and local law. The rights of petitioner in the trust of which she is the beneficiary are not measured in terms of the taxable income of the trust under section 162; they depend on the terms of the trust agreement and the applicable state law. The trust is a separate entity for tax purposes even though petitioner is taxable under section 167 (a) on the income which is distributable for her benefit. The excess of the taxable net income

of the trust over the income distributable for the benefit of petitioner, if any, will be taxable to the trust under section 162, and the trust will receive the benefit of any net loss carry-over in the computation of its taxable net income.

However, in the computation of the income which is distributable for the benefit of petitioner under the trust instrument and upon which she is taxable, a net operating loss which may have been suffered by the trust in 1941 may not be carried over to 1942 and 1943 in order to reduce the distributable income of the trust for those years. Such loss is not a charge under trust principles against future income, but, instead, it is a charge against the corpus of the trust in the year of loss. Uniform Principal and Income Act, section 7; Restatement of Trusts, section 233, comment (c). As grantor of the trust, petitioner is taxable under section 167 (a) on the income of the trust which is distributable for her benefit because of the interest which she has retained in such income, not because she is considered to be, in substance, the owner of the corpus. She is taxable on the distributable income of the trust, not on its taxable income. Therefore, she is not entitled to take all the deductions to which the trust is entitled in the calculation of its taxable income under section 162, just as she is not required to include in her income all of the taxable income of the trust, whether or not it is distributable for her benefit. Thus, in *Edith W. Balch*, 44 B. T. A. 269, affd. (C. A. 6), 129 F. 2d 472, and *Loeb* v. *Commissioner* (C. A. 2), 113 F. 2d 664, 667, affirming 40 B. T. A. 517, it was held that capital losses suffered by a trust are not deductible by the grantor in calculating the income of the trust which is taxable to the grantor under section 167 (a). Cf. *Anderson* v. *Wilson*, 289 U. S. 20. Similarly in this proceeding, where nothing in the trust instrument authorizes the reduction of income which is distributable for the benefit of petitioner by a net operating loss suffered in a prior year, the income of the trust which is includible in petitioner's net income may not be so reduced. Cf. sec. 162 (d) (1) ; Regs. 111, sections 29.162-2 (a) and 29.24-8; *Theodore D. Buhl*, 45 B. T. A. 274; *Busch* v. *Commissioner*, 50 F. 2d 800; *Brigham* v. *United States*, 38 F. Supp. 625.

Disallowance of the benefit of a net operating loss carry-over to petitioner does not deny such benefit to every trust whose entire income is distributable to its beneficiaries, as petitioner contends. As we have already pointed out, the taxable income of a trust and the distributable income under the trust agreement and state law are not the same. If taxable income should exceed distributable income, a trust whose entire income is distributable to its beneficiaries would be able to apply a net operating loss carry-over against the excess of the taxable income over the distributable income, and thus secure the benefits of the loss carry-over. See sections 162, 170.

It is held that any net operating loss which may have been suffered by the trust in 1941 does not reduce the income of the trust which is distributable for the benefit of petitioner in 1942 and 1943 and includible in her net income under section 167 (a). The respondent's determination is sustained.

*Decisions will be entered for the respondent.*