738

ESTATE of Craig R. SHEAFFER, Deceased, Walter A. Sheaffer, II, and John D. Shaeffer, Executors, and Virginia D. Sheaffer, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17075.

United States Court of Appeals
Eighth Circuit.

Feb. 13, 1963.

Rehearing Denied March 6, 1963.

Preston B. Kavanagh, Washington, D. C., made argument for petitioners and E. H. Pollard, Fort Madison, Iowa, D. B. Williams, Chicago, Ill., and Aaron Holman, New York City, were on the brief.

Harry Marselli, Atty. Tax Division, Dept. of Justice, Washington, D. C., made argument for respondent and Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and Lee A. Jackson, Robert N. Anderson, and Donald P. Horwitz, Attys., Washington, D. C., were on the brief.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

This case is here on a petition to review the decision of the Tax Court which determined deficiencies in federal income taxes against petitioners for the calendar years 1954 and 1955 in the amounts of $120,008.64 and $78,352.25, respectively. The decision of the Tax Court is reported at 37 T.C. 99 (1961).

The underlying question for determination is whether for federal income tax

purposes, the 1954 and 1955 income derived from the corpus of trust property and applied by the trustee toward payment of the federal gift tax on the corpus was income to the donors (settlors) of the property.[1] The pertinent facts were stipulated and so found by the Tax Court.

Craig R. Sheaffer and Virginia D. Sheaffer, as husband and wife,[2] filed joint federal income tax returns for 1954 and 1955. On or about February 2, 1954, Virginia D. Sheaffer, as settlor, executed a trust instrument whereby she created four separate trusts for each of her four children and named Harris Trust and Savings Bank of Chicago, Illinois, as trustee. Upon execution of the trust agreement, Virginia assigned and delivered to the trustee certificates for 70,000 shares of the common stock of W. A. Sheaffer Pen Company, and on December 31, 1955, the trustee held these identical certificates.

Section 1 of the trust agreement is relevant to the litigated question and provides:

"The trustee agrees that, to the full extent of the value of the corpus of the trust estate and the income therefrom, it will assume and pay all federal and state gift taxes (including all penalties and interest thereon, if any) which shall or may be assessed or become due from any one by reason of the transfer, assignment and delivery to it of the property listed in Schedule A or by reason of the creation of the trust estate hereunder; and, notwithstanding any other provision herein, the trustee agrees to assume, and to indemnify and hold all persons whomsoever harmless against and from, any obligation or liability whatsoever which they, or any of them, shall or may have for the payment of such taxes or for the reim-

bursement of, or contribution to, the trustee or any person whomsoever on account of the payment of such taxes. The trustee is authorized and agrees to obtain a loan in an amount sufficient to pay all such taxes and to pledge or otherwise to apply such part or all of the corpus and income of the trust estate, and to take such other action, as shall be required or deemed advisable by the trustee in order to secure the loan. The trustee agrees to apply the proceeds of such loan in payment of such taxes."

On or about March 14, 1955, the trustee, pursuant to the trust agreement, filed separate gift tax returns for Virginia and Craig covering the above mentioned stock. Virginia's return was signed by her as donor and by her husband Craig as consenting spouse pursuant to § 1000(f), Int.Rev.Code of 1939, which permits a gift made by one spouse to "be considered as made one-half by him and one-half by his spouse." The same procedure was followed with respect to the return filed on behalf of Craig; that is, he signed as donor and Virginia as his wife signed the consent. The Tax Court determined that under § 1000(f), Int.Rev.Code of 1939, "both Virginia and Craig must be considered as donors of the 70,000 shares of the Pen Company stock," and since this determination is not disputed by either party, we shall treat both Virginia and Craig Sheaffer as the donors or grantors. The gift tax due from Virginia as shown by her return was $167,559.64, and the gift tax due from Craig as shown by his return was $159,747.40. At the time the returns were filed, March 14, 1955, the trustee paid the gift tax, $327,307.04, with its own check and charged that amount to the respective trusts in the proportions indicated in the trust agreement.

---

1. In this case, the applicable Internal Revenue Code pertaining to the income tax deficiencies is the 1954 Code and the applicable code pertaining to the gift tax is the 1939 Code.

2. Craig R. Sheaffer died while the case was under consideration by the Tax Court and Walter A. Sheaffer, II, and John D. Sheaffer, as executors, were substituted as parties petitioners.

As dividends on the 70,000 shares of stock, the trustee received $140,000 in 1954 and $115,500 in 1955. The total receipts and disbursements of the four trusts in the calendar years 1954 and 1955 are shown in detail in the Tax Court's decision and need not be restated here. For our purposes, it is sufficient to observe that the total gift tax of $327,307.04 (as computed by the trustee) was paid by the trustee with trust funds on hand of $188,607.04 and with the proceeds of a loan totaling $138,700 that the trustee had obtained on the security of the assets in the trust.

Upon audit of the gift tax returns the Commissioner of Internal Revenue determined that the value of the W. A. Sheaffer Pen Company stock was greater than that shown on the returns and thus, that there was a deficiency in the gift tax payment. This deficiency, with interest, was paid by the trustee in 1958 and is not in controversy here.

The deficiency in the income tax of petitioners for the years 1954 and 1955 was predicated by the Commissioner in the first instance and later confirmed by the Tax Court on the theory that the dividends received by the trustee in the amount of $140,000 and $115,500 for 1954 and 1955, respectively, and which were applied by the trustee toward payment of the aforesaid gift tax, constituted income to the Sheaffers.

The Commissioner's position, summarily stated, is that under the trust agreement the trustee, a non-adverse party, had the discretionary right to apply the trust income to a reduction of the grantors' liabilities; that such discretion was exercised by application of the 1954 and 1955 trust income to payment of the gift tax which was the personal and primary liability of the grantors; and that these circumstances bring this case within the provisions of § 677 of the 1954 Internal Revenue Code and

justified treatment of such income as taxable to grantors.

Petitioners assert that the grantors, donee and gift assets all became liable for gift taxes at the time that the gift was made; that it cannot realistically be contended that liability of the grantors for such tax is primary and that of the donee and others secondary and tertiary. From this premise petitioners argue for application of the rule that where more than one person is responsible for a debt, payment by one of them does not give rise to income on the part of the others.[3]

■■■ At the outset we once again observe that the Tax Court's findings are presumptively correct—the burden rests upon petitioners to show that the findings upon which the Tax Court based its decision are clearly erroneous—and unless the findings are against the clear weight of the evidence or are induced by an erroneous view of the law, we are not, as a reviewing court, at liberty to disturb such findings on appeal. Sachs v. Commissioner, 8 Cir., 277 F.2d 879, 881 (1960), cert. denied, 364 U.S. 833, 81 S.Ct. 63, 5 L.Ed.2d 59 (1960); Estate of Craig M. Smith v. Commissioner, 8 Cir., 313 F.2d 724. Here, as in Estate of Craig M. Smith v. Commissioner, supra, the facts were stipulated, but this circumstance "does not make this issue any less factual in nature. The Tax Court is entitled to draw whatever inferences and conclusions it deems reasonable from such facts." Boehm v. Commissioner, 326 U.S. 287, 293, 66 S.Ct. 120, 124, 90 L.Ed. 78 (1945); Estate of Craig M. Smith v. Commissioner, supra.

Under § 1000 of the applicable 1939 Internal Revenue Code, a tax is imposed upon transfers of property by gift, subject to certain exclusions and deductions set forth in other sections which are not pertinent here. Section 1006 requires a donor to file a gift tax return "on or before the 15th day of March following the close of the calendar year", and § 1008

---

3. Petitioners cite non-trust cases, holding that payment of an obligation by one party having a financial interest in a transaction does not create income to another also financially interested, e. g., Tucker v. Commissioner, 8 Cir., 226 F.2d 177 (1955); Ruben v. Commissioner, 8 Cir., 97 F.2d 926 (1938).

imposes an obligation upon the donor to pay the gift tax on or before this same 15th day of March. Under § 1009, "The tax * * * shall be a lien upon all gifts made during the calendar year, for ten years from the time the gifts are made," and *"If the tax is not paid when due, the donee of any gift shall be personally liable* for such tax to the extent of the value of such gift." (Emphasis supplied). Also relevant is § 86.3 of Treasury Regulations 108 (1939 Code) which provides that:

"The [gift] tax is not imposed upon the receipt of the property by the donee, nor is it necessarily determined by the measure of enrichment resulting to the donee from the transfer, nor is it conditioned upon ability to identify the donee at the time of the transfer. *On the contrary, the tax is a primary and personal liability of the donor,* is an excise upon his act of making the transfer, is measured by the value of the property passing from the donor, and attaches regardless of the fact that the identity of the donee may not then be known or ascertainable." (Emphasis supplied).

An examination of the controlling gift tax statutes and the cases interpreting them leads us to the inescapable conclusion that the liability for payment of the tax is in the first instance that of the donor, and the donee does not become liable unless the donor fails to make payment of the tax by the 15th day of March following the close of the calendar year. See Mississippi Valley Trust Co. v. Commissioner, 8 Cir., 147 F.2d 186 (1945), and Fletcher Trust Co. v. Commissioner, 7 Cir., 141 F.2d 36 (1944), cert. denied, 323 U.S. 711, 65 S.Ct. 36, 89 L.Ed. 572 (1944). Since the tax in this case was paid before the 15th day of March, we need not concern ourselves with the possible ramifications of a situation where payment of the tax was made at a time when both the donor and the donee were independently liable for the tax. Indeed, the primary obligation here was upon the donors, Virginia

and Craig Sheaffer, and no additional liability, secondary or otherwise, ever arose since the gift tax shown on the returns was paid before it became due on March 15, 1955.

Remaining for our determination is the question whether the trust income applied by the trustee, pursuant to its express discretionary power, to the payment of the primary gift tax obligation of the grantors, was income constructively received by the grantors and therefore subject to the income tax in controversy. Here, the parties differ in their views as to the applicable statutes. Section 677 of the Internal Revenue Code of 1954 provides in pertinent part:

"The grantor shall be treated as the owner of any portion of a trust * * * whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a non-adverse party, or both, may be—

"(1) distributed to the grantor;"

Section 1.677(a)–1(d) of the Treasury Regulations on income tax (1954 Code) provides:

"Under Section 677 a grantor is, in general, treated as owner of a portion of a trust whose income is, or in the discretion of the grantor or a non-adverse party, or both, may be applied in discharge of a legal obligation of the grantor."

Petitioners contend that § 677 has no relevance and that we should look only to § 61 of the 1954 Code which provides, in effect, that gross income means all income from whatever source derived, including but not limited to fifteen specifically designated items.

We agree with the Commissioner that § 677, supra, must first be applied in determining whether as a result of the transaction petitioners derived income which is within the ambit of § 61, supra. We are of the view that, inasmuch as the income from the trust was applied by a non-adverse party (the trustee) in discharge of the grantors' primary obligation to pay the gift tax, the grantors

must be treated as owners of that portion of the trust for income tax purposes. To us this holding is in accordance with the explicit provision of § 677, supra, and the applicable regulations and is consistent with judicial decisions which in our view are analogous in principle.

In Douglas v. Willcutts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3 (1935), a husband created a trust which became part of a divorce decree and which provided for full settlement of alimony in favor of his divorced wife. The Supreme Court, applying the forerunners of the statutes here involved, held that income from the trust was income taxable to the husband since it was used in discharge of his general obligation to support.

Helvering v. Blumenthal, 296 U.S. 552, 56 S.Ct. 305, 80 L.Ed. 390 (1935), reversing 2 Cir., 76 F.2d 507 (1935), furnishes additional support for the Commissioner's position. There, a settlor irrevocably transferred approximately $300,000 worth of stock in trust upon condition that the trust pay out of dividends received on the stock, a $33,000 demand note of the settlor held by a bank and secured by pledge of the stock which was the subject of the trust. Relying in part upon the bank's custom of selling the stock before seeking to enforce payment by the obligor, the Second Circuit held that the settlor was not liable for income tax on the dividends, stating:

> "The effect of transferring this stock, subject to the debt, was to make the stock the primary fund to meet the obligation and to place the petitioner [settlor] in the relation of surety only. Petitioner [settlor] was not enriched in any way by the payment of the note." 76 F.2d at 508.

In a per curiam opinion and on the authority of Douglas v. Willcutts, supra, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, the Supreme Court reversed the Second Circuit.

We also regard Staley v. Commissioner, 5 Cir., 136 F.2d 368 (1943), cert. denied, 320 U.S. 786, 64 S.Ct. 196, 88 L.Ed. 473 (1943), as persuasive authority against the contentions asserted by petitioners. In Staley, the taxpayer created five trusts by gift, expressly reserving the first $30,000 of income from each trust. This amount, or a total of $150,000, was paid to the taxpayer. Although the trust agreements did not explicitly provide the purpose for which the income was being reserved, it is apparent that the purpose of the reservation was to provide the amount necessary to discharge the taxpayer's gift tax obligation and that the taxpayer actually used the amount reserved for that purpose. Indeed, the Fifth Circuit, in holding the amount reserved as taxable income of the donors, stated that the gift:

> "* * * was intended to be, and actually was, a gift of the entire corpus and of all the income except an amount necessary to assist in paying the gift taxes. Expressed differently, it was an outright transfer for no consideration, but with a reservation to the donor of a portion of the income." 136 F.2d 369, 370.

See also, Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154 (1942), modified 317 U.S. 602, 63 S.Ct. 140, 87 L.Ed. 154 (1942), and Loeb v. Commissioner, 7 Cir., 159 F.2d 549 (1946).

Petitioners would, in effect, have us ignore the basic fact that the transfer in this case was made in *trust*. The cases cited by petitioners that involved trusts, such as Edwards v. Greenwald, 5 Cir., 217 F.2d 632 (1954) and David Keith, 45 B.T.A. 644 (1941), are factually distinguishable. We have also accorded due consideration to Estate of Morgan, 37 T.C. 981 (1962), decided by the Tax Court since its decision in this case. We do not regard Morgan as controlling or dispositive of the issues presented herein.[4]

4. We are advised that the Commissioner has appealed the decision in the Morgan case to the Court of Appeals for the Sixth Circuit.

In summary, the donors here transferred property as a gift in trust in 1954; became primarily liable for the payment of the federal gift tax; gave the trustee discretionary power to use trust income to satisfy this obligation; had their gift tax obligation discharged by March 15, 1955, partially with the 1954 and 1955 trust income, before any other party became liable for the gift tax payment; and thus, within the meaning of the law, became the owners of a portion of the trust for income tax purposes.

Although the factual circumstances and the statutes involved in Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319 (1939), were entirely different from those in the instant case, we believe that some of the language used by the Supreme Court in that opinion is particularly apropos here.

"We cannot too often reiterate that 'taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid.' * * And it makes no difference that such 'command' may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency. * * * 'A given result at the end of a straight path,' * * * 'is not made a different result because reached by following a devious path.' Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed, * * *. Taxes cannot be escaped 'by anticipatory arrangements and contracts however skilfully devised * * * by which the fruits are attributed to a different tree from that on which they grew.'" 308 U.S. at 357, 358, 60 S.Ct. at 278, 279, 84 L.Ed. 319.

What the trustee received as trust income and applied to payment of the gift tax, the Sheaffers in reality constructively received, and on that the petitioners must be taxed.

The decision of the Tax Court is Affirmed.