## VIRGINIAN RAILWAY COMPANY v. MULLENS.

CERTIORARI TO THE CIRCUIT COURT OF WYOMING COUNTY, WEST VIRGINIA.

No. 163. Argued January 21, 22, 1926.—Decided May 24, 1926.

1. A railroad company is not liable for floodings of private land resulting from a condition of the railroad structure amounting to a nuisance, when the nuisance was created by its predecessor in title, and where the injurious consequences occurred when the railroad had been taken over and was being operated by the Government under the Federal Control Act. P. 223.

2. A plaintiff who has brought and tried an action for damages to his land upon the ground that the defendant was liable as a tort feasor, can not shift, on appeal, to a theory of contract liability. P. 227.

Reversed.

CERTIORARI to a judgment of the Circuit Court of West Virginia, (which the Supreme Court of Appeals declined to review,) awarding damages against the Railway for injuries to the land of the plaintiff, Mullens, found to have resulted from obstruction and diversion of a stream by a railroad embankment.

*Messrs. H. T. Hall* and *W. H. T. Loyall,* with whom *Messrs. E. W. Knight, G. A. Wingfield,* and *M. P. Howard* were on the brief, for petitioner.

*Mr. J. Albert Toler* for respondent.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This was an action in a state court in West Virginia to recover for injuries to the plaintiff's land resulting from a nuisance alleged to have been created and maintained by the defendant. The action was begun June 14, 1921. The case stated in the complaint was to the effect that the defendant constructed in 1904, and operated up to the time of suit, a railroad through West Virginia, a short section of which was located on a right of way acquired for the purpose and extending laterally into a natural stream bounding the plaintiff's land; that this section was constructed by filling in and building up the outer part of the bed of the stream opposite his land and placing the track on the embankment so made; that the embankment and track narrowed the former channel, crowded the current against the bank on the plaintiff's side and exposed his land to overflow and injury; and that on divers occasions thereafter, particularly in the years 1918 and 1919, this obstruction caused the waters to wash away portions of the bank and to overflow and injure his land.

The defendant interposed a plea putting in issue the allegations in the complaint, and by a further plea insisted

that the road was under federal control from December 28, 1917, to March 1, 1920, and that no liability attached to the defendant for such of the injuries as occurred during that control.

The trial resulted in a verdict and judgment for the plaintiff; and the Supreme Court of Appeals of the State, although petitioned by the defendant to review the judgment, declined so to do, thus making the trial court the highest court of the State in which a decision could be had. *American Ry. Express Co.* v. *Levee*, 263 U. S. 19. The case is here on writ of certiorari; and the question presented is whether there was error in holding the defendant liable for injuries done during federal control.

The case shown by the evidence differed from that stated in the complaint. Affirmatively and without dispute the proofs disclosed that the railroad was not constructed by the defendant, but by another railway company, and was purchased by the defendant in 1907, after it was completed and in full operation; that after the purchase the defendant used the embankment and track in the bed of the stream as an integral part of the road, just as it was used before; that the plaintiff, although familiar with the situation, made no complaint of this use or of the presence of the embankment and track in that place; that on December 28, 1917, the United States took possession of the railroad and its appurtenances, and from that time to March 1, 1920, operated and controlled the same to the exclusion of the defendant; that during such operation and control the United States exercised the usual rights of an owner by altering parts of the road-bed, widening tunnels, laying double tracks along parts of the road and using the property as best suited the Government's purposes. As respects the section in the bed of the stream, the evidence showed that the United States made no change therein but continued the use theretofore made of it as part of the road. And as respects the

injuries done to the plaintiff's land, the evidence, taken most favorably to him, disclosed that, while there was some cutting of the bank on his side soon after the road was constructed and also during the defendant's possession and operation, the chief injuries occurred in February, 1918, and July, 1919, during federal control, when in the course of two unusual freshets portions of the bank were washed away and his land was overflowed and materially injured.

At the conclusion of the evidence the defendant, relying on acts of Congress and proclamations of the President bearing on the federal control, requested the court to charge the jury that the defendant was not liable for the injuries occurring during such control and that as to them the finding and verdict must be for the defendant. But the request was refused and the defendant excepted. If the request was well grounded in law, its refusal was plainly prejudicial.

While the evidence may have admitted of a finding that the embankment and track in the bed of the stream tended to obstruct and divert the current in such a way as to constitute a nuisance, it affirmatively and indubitably precluded a finding that the defendant constructed them or did more than use them as an integral part of a completed road which it had purchased as a going concern from a prior owner. Thus there was no basis on which the defendant could be charged with liability as the creator of the nuisance. If liable at all, it was liable only because it continued the use to which the embankment and track were put by its grantor. There has been much contrariety of decision in the courts of the several States as to whether a purchaser who merely continues a prior use of such a structure may be charged, at the instance of one who has made no complaint or objection, with liability for maintaining a nuisance. The question ordinarily is one of local law to be resolved according to

local decisions; and out of deference to the action of the court below we assume that in West Virginia a complaint or objection is not deemed essential, although no decision on the point by the Supreme Court of Appeals has been brought to our attention. But here it was insisted, and the proofs conclusively established, that the defendant's use ceased when federal control began, and that the chief injuries occurred during the period of that control. The questions of the defendant's legal relation to the road and operation thereof while under federal control and of its liability for injuries occurring during that period involved a consideration of the nature of that control and of the operation and effect of federal statutes and proclamations bearing on the subject. In short, they are federal questions.

By the Act of August 29, 1916, c. 418, 39 Stat. 645, Congress empowered the President, in time of war, to take possession and assume control of transportation systems and to utilize the same in the transportation of troops, war material and equipment, and for other needful or desirable purposes incident to such an emergency. War with Germany was declared April 6, 1917, and with Austria-Hungary December 7, 1917; and in both instances Congress pledged all of the resources of the country to bring the conflict to a successful termination. 40 Stat. 1 and 429. Under a proclamation declaring his purpose so to do, 40 Stat. 1733, the President took possession and assumed control, at noon on December 28, 1917, of various systems of transportation, including the defendant's railroad and the appurtenances thereof, to the end that they might be operated and utilized in transporting troops, war material and equipment, and in performing other service in the national interest; and he committed the possession, control, operation and utilization of such systems to a Director General designated by him for the purpose. By the Act of March 21, 1918, c. 25, 40 Stat. 451,

Congress confirmed the President's action in thus taking over the transportation systems; made provision for continuing such federal control under the President's direction, and empowered him to exercise his authority in that regard through agencies of his selection. In General Order No. 50, issued October 28, 1918, (U. S. R. R. Administration Bulletin No. 4, Revised, 334,) which recited that suits were being brought against railroad companies, the roads of which were under federal control, on causes of action arising during such control for which the companies were not responsible, it was directed that actions and suits based on claims for injuries to persons, damage to property, etc., growing out of the possession, use, control or operation of any railroad by the Director General be brought against that officer, and not otherwise.

We heretofore have considered the legislation, proclamation and order just recited and have held that they provided for a complete possession by the United States and contemplated a single and effective control by federal authority to the exclusion of the private owners, *Northern Pacific Ry. Co. v. North Dakota,* 250 U. S. 135, 148; and that during federal control " no liability arising out" of the operation of these systems was imposed by the common law upon the owner-companies as their interest in and control over the systems were completely suspended," *Missouri Pacific R. R. Co. v. Ault,* 256 U. S. 554, 557. In the latter case the contention was made that the Act of 1918 should be construed as subjecting the companies to liability for acts or omissions of the agency exercising federal control, notwithstanding they were deprived of all power over the properties, because the just compensation to be paid to them would include any loss resulting to them from such liability. But this Court disposed of the contention by saying (p. 559): "Such a radical departure from the established concepts of legal liability would at least approach the verge of constitutional power.

9542°—26——15

It should not be made in the absence of compelling language. There is none such here." And, turning to a provision in the Act of 1918 declaring "carriers while under federal control" liable and suable, the Court said (p. 559): "Here the term 'carriers' is used as it is understood in common speech, meaning the transportation systems as distinguished from the corporations owning or operating them"; and (p. 561): "This means, as matter of law, that the Government or its agency for operation could be sued, for under the existing law the legal person in control of the carrier was responsible for its acts. . . . All doubt as to how suit should be brought was cleared away by General Order No. 50, which required that it be against the Director General by name." In *Wabash Ry. Co.* v. *Elliott,* 261 U. S. 457, 462, the decision was to the same effect. In *North Carolina R. R. Co.* v. *Lee,* 260 U. S. 16, it was held that the Government operated the railroads during federal control "not as lessee, but under a right in the nature of eminent domain"; and in *Dupont de Nemours & Co.* v. *Davis,* 264. U. S. 456, 462, it was added that "In taking over and operating the railroad systems of the country the United States did so in its sovereign capacity, as a war measure."

In principle these decisions are determinative of the question here presented. They show that federal control did not rest on a conventional arrangement with the owner-companies, but on an exertion of supreme governmental power, and that the legislation, proclamation and order before recited contemplated a complete separation of the companies from the roads while under such control, and an absence of responsibility by the companies for losses and injuries resulting from the use, operation and maintenance of the roads during that period.

When the United States took over this road the embankment and track in the bed of the stream were taken over as part of it; and the defendant was deprived of all

power over them while they remained under federal control. Their maintenance and use during that period were exclusively in the hands of federal agents. If a duty rested on anyone to make any change in them it rested on the federal agents; and if maintaining and using them without change was a wrong against the plaintiff it was a wrong committed by those agents, for which no liability attached to the defendant.

The plaintiff relies on cases holding the creator of a nuisance liable for injuries resulting therefrom after he had transferred the premises to another by deed or lease; but they are not in point. They proceed on the theory that by such a transfer the creator expressly or impliedly affirms the right of the transferee to continue the prior situation or use, and also voluntarily disables himself from correcting or abating the same. Here the defendant had neither created the nuisance nor made a voluntary transfer of the premises. The United States, as we have seen, came into possession, not as a conventional transferee, but by an exercise of governmental power in which the defendant had no voice.

The plaintiff also seeks to support the judgment on the theory that the defendant company was under a contract obligation to protect his land from injury, and to make out that obligation he refers to a clause in the deed whereby the defendant's grantor acquired the right of way and to a clause in the deed whereby the defendant afterwards acquired the completed road. But he is not in a position to urge this contention here. The case stated in the complaint was distinctly in tort. There was no mention of a contract obligation; nor any reference to either of the two deeds. And when the court came to charge the jury the plaintiff tendered and the court included in its charge various instructions wherein the case was treated, in keeping with the complaint, as one to recover damages for an alleged tortious creation and continuance of a nuisance. After bringing and trying the case on that theory the

plaintiff cannot be permitted on this review to change to another which the defendant was not required to meet below. Other objections to the contract theory are suggested but they need not be considered.

We conclude that the court should have instructed the jury, as it was requested to do, that the defendant was not liable for the injuries occurring during federal control.

*Judgment reversed.*