UNITED STATES *v.* GLOBE SHIPPING CO., INC. (MASON PARKER MFG. CO.), ET AL.

**No. 4527.**— Invoices dated Coventry, England, July 12, 1935, etc.
Certified July 12, 1935, etc.
Entered at New York July 22, 1935, etc.
Entry No. 707672, etc.

(Decided February 24, 1939)

*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the appellant.
*Puckhafer & Rode* (*George J. Puckhafer* of counsel) for the appellees.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is an application for review of the decision of the trial judge (Reap. Dec. 4307) in finding the value of cotton ladder tape imported from F. Rollason & Co. of Coventry, County of Warwick, England, during the years 1935 and 1936.

The merchandise entered for the account of Mason Parker Mfg. Co. was all invoiced as "cotton ladder tape, Mingled D" at a value of 24 shillings per gross yards, less a discount of 3¾ per centum and less inland freight from the factory to the port of shipment, the cost of the packing being included. The appraiser added 6 per centum to the unit value of the merchandise covered by reappraisement appeals 112376–A, 112377–A, 112378–A, 112379–A, 112380–A, 112381–A and 112382–A but allowed the invoice discount of 3¾ per centum on the advanced value and the deduction for inland freight. A statement on a sheet attached to the invoice entitled "Summary of Examination and Appraisement" shows that the appraisement was made on the basis of export value.

The importer made an advance of 6 per centum on the entry covered by reappraisement appeal 112925–A to meet the advance made by the appraiser in the test cases, and the merchandise covered by that entry was passed by the appraiser as entered.

The merchandise in reappraisement appeal 112563–A consists of three different qualities of cotton ladder tape entered by Century Venetian Blind Co., Inc. The item invoiced as "Mingled D" was entered at 24 shillings per gross yards, that invoiced as "Chocolate D" was entered at 26 shillings per gross yards, and that invoiced as "Duck D" was entered at 23 shillings and 6 pence per gross yards, all the items being subject to a discount of 3¾ per centum. The inland freight was deducted also and the packing was included in the value. The appraiser added 5 per centum to make market value in that shipment instead of 6 per centum as in the other cases.

Counsel for the importer contended before the trial judge that the appraiser's addition was that of a commission of 6 per centum which was a buying commission and not a selling commission and therefore not a part of the dutiable value of the goods.

It appears from the record that the only question presented to the trial judge was whether the 6 per centum added by the appraiser was a dutiable or nondutiable commission. This appears in the record as follows:

Judge KINCHELOE. Do you agree with Mr. Puckhafer that the only controversy here is this 6 per cent, which he claims is a commission?

Mr. WEEKS. That is the sole issue, if your honor please.

Judge KINCHELOE. And the contention of the Government is that it is a dutiable item?

Mr. WEEKS. That is it exactly, sir.

\* \* \* \* \* \* \*

Judge KINCHELOE. As I understand this, Mr. Puckhafer contends that this 6 per cent is a commission. Does the Government concede it is a commission, but that it is a dutiable item?

Mr. WEEKS. I am not sure whether it is a commission or not. The Government contends this: that the recipient of this commission or the payee is D. Roditi & Son of England; that Roditi is the sole selling agent for the manufacturer; that Roditi has the sole exclusive right from the manufacturer of this merchandise to purchase all the goods which are destined for export to both the United States and Canada. It also happens that the same Roditi is the agent of Mason & Parker, the plaintiff in the first cases we tried, the importer in those cases. Their claim is that their agent abroad, Roditi, performs certain services for which they pay this 5 or 6 per cent commission, whichever it may be.

The trial judge held that the appraiser added a 6 per centum commission paid to a buying agent and that this commission was not a part of the market value of the goods, citing *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007; *United States* v. *Bauer et al.*, 3 Ct. Cust. Appls. 343, T. D. 32627; and *United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T. D. 40958. The lower court held that the value of the merchandise covered by all of the appeals, except 112563–A, was the unit invoice value, less 3¾ per centum discount and less inland freight from the factory to the port of ship-

ment, the packing being included in the price. As to appeal 112563–A, the court held that the evidence was not sufficient to overcome the presumption of correctness of the action of the appraiser and dismissed the appeal. The Government included that appeal in its application for review before this division, but the importers did not cross-appeal.

In the argument before this division, counsel for the appellant raised entirely new points, not contested before the trial judge. He did not contend that the 6 per centum added by the appraiser was a selling commission and not a buying commission. His only contention was that the importer did not prove all the essential facts required to establish export value, that is, that the importer did not show the principal market, the usual wholesale quantity in which the merchandise was sold or the value of similar merchandise. The appellant contends that in the absence of such testimony the appeals should have been dismissed by the trial judge.

Counsel for the appellee did not answer the appellant on these points but limited his argument to the question of whether the 6 per centum addition was a buying commission or a selling commission, evidently considering that that was the only issue before the court below and that the appellant could not raise a new point before the appellate division which was not contested below.

In the case of *United States* v. *American Express Co.*, Reap. Dec. 2816, the appellant argued a point before this division not presented to the trial judge. Judge Evans, speaking for the court, said:

The question of a restricted market was not presented to the judge below sitting in reappraisement, and he had no opportunity to rule on that point except as it appears as part of the testimony submitted by the special agent. Inasmuch as the Government made no point below that the 160-pengö price was of restricted sales it is our opinion that it cannot raise that point here. It would be unfair to the single judge so to do. The record clearly shows that the only difference between the importer and the Government at the trial was the one arising from the fact that a bounty was paid to the manufacturer. The case is therefore to be considered on the same basis on appeal. It is well settled that appellate tribunals do not pass on questions not presented to the lower court. *Howland* v. *Beck*, 56 Fed. (2nd) 35; *Van Huffel* v. *Harkelrode*, 284 U. S. 225, 229; *Peck* v. *Heurick*, 167 U. S. 624; *Virginia Ry. Co.* v. *Mullens*, 271 U. S. 220; *New York* v. *Kleinert*, 268 U. S. 646.

We are of opinion that the agreement of counsel for the Government before the trial court to the effect that the only issue was whether the 6 per centum addition made by the appraiser was an agent's commission for buying or for selling is a waiver of all other claims.

When the case was called for trial in the court below, counsel for the importers introduced, as Exhibit 1, an affidavit of F. B. Rollason, the owner of the manufacturing company. After enumerating the

particular consular invoices covered by the appeals of Globe Shipping Co., Inc. (Mason Parker Mfg. Co.), he states:

> The prices and discounts appearing upon said invoices represent the actual sums received and are the prices at which the said merchandise is freely offered and sold by my company to any purchaser in the markets of England, in similar wholesale quantities or to the Colonies and to other firms in the United States.

An affidavit of William Lethbridge May, managing director of D. Roditi & Son, Ltd., of London, England, was introduced in evidence as Exhibit 2, in which the following appears:

> My firm is distinctly a buying office and not a selling organization, and we charge the Mason & Parker Manufacturing Company a commission of 6% for performing the usual services of a commissionaire, which consists of placing the orders with R. Rollason & Company, examining the merchandise to ascertain whether it is in strict accordance with the order, and attending to the shipping of the merchandise to the buyer.

> We definitely buy from R. Rollason & Company at the invoice price, less cash discount, which is passed on to the Mason & Parker Manufacturing Company, and we charge Mason & Parker Manufacturing Company a commission for handling the business.

Counsel for the Government introduced a report of Acting Treasury Attaché Charles R. Clark which was admitted in evidence and marked "Exhibit 3." The following appears in this report relative to the transaction herein involved:

### EXPORT MARKET

VERIFICATION.

> The shipment in question is part delivery of an order for 634 gross yards of cotton ladder tape, "Mingled D" color and quality, placed by the buying agents D. Roditi & Son Ltd., London, England, January 12, 1935, for shipment to the importers at 24/-per gross yard, less 3¾% for prompt cash payment, all packing expense and delivery costs to Liverpool included in the price.

> *Payment* of the shipment was made July 23, 1935, by check from Roditi & Sons Ltd., "on a/c of Mason & Parker, your invoice dated 12/7/35, for £52.9. 11d."

The total value of the invoice in the shipment of July 12, 1935, covered by reappraisement 112376–A, is £52 9s. 11d., so it appears that the invoice describes an authentic transaction, as far as the manufacturer's books show. The manufacturer told the Government agent that "he quoted Roditi & Son, Ltd., the same price (for the shipment in question) that he would have quoted any home market customer at the same time." However, he states further that the same item was not sold in the markets of Great Britain as "Mingled D" but the same quality was sold in that country under the name "Duck" at the price of 24 shillings per gross yards with a trade discount of 7½ per centum and a cash discount of 2½ per centum. This is shown by the following statement in the report:

SIMILAR QUALITY SOLD IN GREAT BRITAIN.

> However, the same quality and weight of cotton ladder tape called the "Duck" color and quality is offered for sale and occasionally sold in the home market, to

one customer, at the same price of 24/-per gross, but less a trade discount of 7½% and a cash discount of 2½% (for cash payment on monthly account), packing costs and free delivery to Manchester, England, being included in the price.

As greater discounts are allowed in the home market than for export, it is obvious that the home market for similar merchandise is lower than the export value of the goods herein involved.

The following statement appears in Exhibit 3 relative to an agreement between the manufacturer and Roditi & Sons, Ltd., of London:

SOLE PURCHASING RIGHTS TO RODITI & SON.

In an exchange of letters during February this year, Mr. Rollason agreed to grant Roditi & Son, Ltd., London, England, buying agents for the importers, Mason & Parker Manufacturing Co., Winchenden, Mass., the sole purchasing rights in America and Canada, for an indefinite period, of Venetian ladder tape made by his company.

Probably this statement was the reason that the appraiser believed that the 6 per centum commission was a selling commission rather than a buying commission, but, in view of the statements in Exhibit 2, we are of opinion that the trial judge was justified in giving more weight to the sworn statements in Exhibit 2 than to the above-quoted excerpt from Exhibit 3. The trial court, in weighing this evidence, said:

This seems to be merely a statement of an opinion of the said Clark, for no evidence was submitted by him in his report to substantiate said agreement either by copies of the alleged correspondence mentioned in his report or in any other way. Moreover the above statement itself does not show that the alleged agreement was ever accepted by the parties or a contract to this effect was ever entered into by the parties.

No reference is made in the report to the usual wholesale quantity in which the merchandise is sold, but where the price of an article sold does not vary according to the quantity delivered, the point is unimportant, for, in the case of *Jenkins Bros.* v. *United States*, 25 C. C. P. A. 90, T. D. 49093, the court said:

Of course, where the price at which an article is sold does not vary according to quantities sold, no question of usual wholesale quantity can arise, and in such case a single article may sometimes be regarded as a usual wholesale quantity.

The Government introduced as Exhibits 4 and 5 certain form letters, which had been sent to the importers, containing questions concerning the amount of funds transmitted to pay for each of the shipments. The importers answered these questions stating the sum transmitted for each shipment. A comparison of the total invoice values with the figures named in the exhibits shows that the importers transmitted a greater sum in each case than the total invoice values. However, one of the letters addressed to Mason & Parker Manufacturing Co. contains the notation "including amount, if any, paid to

D. Roditi & Sons, Ltd." and in the letter addressed to the Century Venetian Blind Co. (Exhibit 5) the importer answered as follows: "Value of merchandise £71. 5. 3d.   Bying Comm. to Roditi £3. 10. 9d. total £74. 16. 0d."   The total invoice value in the importation by the Century Venetian Blind Co., covered by reappraisement 112563–A, is £71 5s. 3d.·  Evidently the amounts shown in these exhibits to have been transmitted to pay for the goods included the buying commission paid to D. Roditi & Sons, Ltd.

An issue similar to that herein involved was presented to this division in the case of .*United States* v. *Sears, Roebuck & Co.*, Reap. Dec. 4260, wherein the appraiser added to the invoice value of the goods a sum equal to a buying commission paid by the importer to its agent in Great Britain.   The court held that the invoice and entered values represented the value of the goods and that the buying commission added by the appraiser was not a part of the dutiable value.

As the importers did not appeal from the decision of the trial court in reappraisement appeal 112563–A, they cannot hope to receive a more favorable judgment than was rendered by the trial judge, citing *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318.

We find as follows:

1. The only question for decision before this division is whether or not the addition made by the appraiser was a buying commission, a nondutiable item, or a selling commission, a dutiable item.

2. The weight of evidence sustains the finding of the trial judge that the importers paid their agent D. Roditi & Sons, Ltd., of London, England, a commission for purchasing the goods herein involved and for examining the same to ascertain whether they were in strict accord with the orders and to attend to the shipping of the merchandise to the importers.

3. The unit invoice values, less a discount of 3¾ per centum and less inland freight from the factory to the port of shipment, were the export values of the merchandise at the time of the shipments, including the cost of the packing, and there was no higher foreign value for the same or similar merchandise.

We hold that, as to the merchandise covered by reappraisement appeals 112376–A, 112377–A, 112378–A, 112379–A, 112380–A, 112381–A, 112382–A, and 112925–A, the values of the merchandise stated in finding 3 above are the dutiable values of the goods, and that, as the importer did not appeal from the judgment of the trial judge in reappraisement appeal 112563–A, his decision will not be disturbed.

The decision below is affirmed.