Amy C. MELLOTT, Paul C. Mellott and Forrest R. Mellott, a Minor, and Kay Virginia Mellott, a Minor, by their guardian The Valley National Bank of Chambersburg, Appellant,

v.

UNITED STATES of America.

No. 12452.

United States Court of Appeals Third Circuit.

Argued April 2, 1958.

Decided July 2, 1958.

Rehearing Denied July 21, 1958.

Certiorari Denied Oct. 20, 1958.

See 79 S.Ct. 96.

Henry D. O'Connor, Philadelphia, Pa., for appellants.

George W. Beatty, Washington, D. C. (Harold K. Wood, U. S. Atty., Philadelphia, Pa., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Karl Schmeidler, Attys., Dept. of Justice, Washington, D. C., on the brief), for the United States.

Before KALODNER and HASTIE, Circuit Judges, and LAYTON, District Judge.

KALODNER, Circuit Judge.

Can the heirs of an estate, in computing their individual income taxes, assert the benefits of a carry-back of a net operating loss available to the estate under the Internal Revenue Code of 1939? Otherwise stated, is a decedent's estate a taxable entity separate and distinct from its heirs?

The issue is presented by this appeal from judgment of the District Court for the Eastern District of Pennsylvania in favor of the United States.[1]

The undisputed facts may be summarized as follows:

Herman B. Mellott, a road contractor and strip-coal mine operator, who lived in Pennsylvania, died intestate on July 16, 1948. He was survived by his widow and three children. Under Pennsylvania law the widow inherited one-third of the deceased's estate and the three children the remaining two-thirds in equal shares.

The widow, Amy C., and oldest son, Paul C. were appointed administrators of Mellott's estate; the Valley National Bank of Chambersburg, Pennsylvania, was appointed guardian of the two minor children, Forrest R. and Kay Virginia.

The administrators continued to operate the business of the decedent pending

---

1. The opinion of the District Court is reported at D.C.E.D.Pa.1957, 156 F.Supp. 253.

final distribution of the estate. In September, 1949, they filed a fiduciary tax return on the cash basis for the period beginning July 16, 1948, the date of decedent's death, and ending June 30, 1949. The return reported a sizeable net income. Since the decedent died intestate, and under applicable Pennsylvania law there was no provision for the accumulation of income of an intestate, the net income reported in the fiduciary return was distributable to the heirs of the estate and they reported their distributive shares in their individual income tax returns for 1949. Since under Section 162 (b) [2] of the Internal Revenue Code of 1939, as amended, the estate was allowed a deduction for income currently distributable to the heirs, the estate itself had no taxable income for the period ending June 30, 1949.

In the latter part of 1950, a fiduciary income tax return for the fiscal year ending June 30, 1950, was filed on behalf of the estate by the administrators in which was reported a substantial net operating loss approximating something less than 75 per cent of the estate's net income for the prior year. The administrators, however, did not amend the June 30, 1949 fiduciary income tax return of the estate to include the carry-back of the net operating loss. Instead, each of the heirs in proportion to his or her share of the estate under the Pennsylvania Intestate Law, 20 P.S. § 1.1 et seq., claimed a part of the estate's 1950 net operating loss and each recomputed his or her 1949 individual tax return to reflect this loss. Timely claims for tax refunds were filed by the heirs which the Commissioner denied, and the heirs brought suit. Upon motions for summary judgment made by the heirs ("taxpayers"), and the United States, the District Court rendered judgment for the United States. The action of the District Court was premised on its holding that under Section 122(b) (1) (A) of the 1939 Code "only the taxpayer sustaining the 'net operating loss' is to take advantage of the carry-back", and, "In the case before us, the 'taxpayer' sustaining the net operating loss is the estate and not the heirs." 156 F.Supp. at page 255.

On this appeal the taxpayers urge in substance that they are in effect the estate and thus, since the estate was entitled to a carry-back into 1949 of the net operating loss suffered in 1950, that they are entitled in their individual returns to the benefits of that carry-back. As an alternative argument they assert here, for the first time, that they were individual members of a de facto partnership engaged in the operation of decedent's business and as such they are entitled to offset the partnership loss in the later year against the profits of the preceding year.

The United States takes the position that "the relevant Code provisions treat the estate as an entity separate from its beneficiaries, and confine deductions to the estate which sustained the loss * * Here, taxpayers as beneficiaries of the estate, are not the same taxpayer as the estate and are not entitled to the estate's loss carry-back."

2. "§ 162. Net income

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\*　\*　\*　\*　\*

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, 'income which is to be distributed currently' includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;" 26 U.S.C. 1952 ed. Sec. 162, 53 Stat. 66, as amended by Sec. 111(b) of the Revenue Act of 1942, 56 Stat. 809.

Applicable to the determination of the problem presented by this appeal are these provisions of the 1939 Code, as amended:

Section 23(s) [3] which authorizes a deduction from gross income of a net operating loss to the extent provided in Section 122; [4] Section 170 [5] which allows the benefits of this deduction to an estate; Section 122(b) which provides if "the taxpayer has a net operating loss" for any taxable year he may carry-back the loss to each of the preceding two taxable years commencing with the second preceding year.

In applying the deduction provisions above stated we must adhere to this explicit instruction of the Supreme Court in New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L. Ed. 1348:

"Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed."

Further:

"The statutes pertaining to the determination of taxable income have proceeded generally on the principle that there shall be a computation of gains and losses on the basis of a distinct accounting for each taxable year; and only in exceptional situations, clearly defined, has there been provision for an allowance for losses suffered in an earlier year. *Not only so, but the statutes have disclosed a general purpose to confine allowable losses to the taxpayer sustaining them, i. e., to treat them as personal to him and not transferable to or usable by another.*

"*Obviously, therefore, a taxpayer seeking a deduction must be able to*

---

3. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"(s) Net operating loss deduction. For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122." 26 U.S.C.1952 ed. Sec. 23, as added by Sec. 211(a) Revenue Act of 1939, 53 Stat. 867.

4. "§ 122. Net operating loss deduction
"(a) Definition of net operating loss. As used in this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

"(b) Amount of carry-back and carry-over.

"(1) Net operating loss carry-back.

"(A) Loss for taxable year beginning before 1950. If for any taxable year beginning after December 31, 1941, and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year computed

"(i) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and

(ii) by determining the net operating loss deduction for such second preceding taxable year without regard to such net operating loss and without regard to any reduction specified in subsection (c).

"(B) Loss for taxable year beginning after 1949. If for any taxable year beginning after December 31, 1949, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for the preceding taxable year." 26 U.S.C.1952 ed. Sec. 122 as added by Sec. 211(b) Revenue Act of 1939, 53 Stat. 867, and amended by Sec. 105(e) (3) (A), Revenue Act of 1942, 56 Stat. 807, and Sec. 215, Revenue Act of 1950, 64 Stat. 937.

5. "§ 170. Net operating losses
"The benefit of the deduction for net operating losses allowed by section 23(s) shall be allowed to estates and trusts under regulations prescribed by the Commissioner with the approval of the Secretary. The benefit of such deduction shall not be allowed to a common trust fund, but shall be allowed to the participants in the common trust fund under regulations prescribed by the Commissioner with the approval of the Secretary." 26 U.S.C. 1952 ed. Sec. 170, as added by Sec. 211(c) of the Revenue Act of 1939, 53 Stat. 867, 868.

*point to an applicable statute and show that he comes within its terms."* (Emphasis supplied.)

Since the statute involved in the New Colonial Ice Co. case was Section 204(b) of the Revenue Act of 1921,[6] the predecessor of provision of Section 122, what was there stated is particularly pertinent and dispositive in our consideration of the issue presented in this appeal.

Said the Court at pages 440, 441 of 292 U.S., at pages 790, 791 of 54 S.Ct.:

"When § 204(b) is read with the general policy of the statutes in mind, as it should be, we think it cannot be regarded as giving any support to the deduction here claimed. It brings into the statutes an exceptional provision declaring that where for one year 'any taxpayer has sustained a net loss' the same shall be deducted from the net income of 'the taxpayer' for the succeeding taxable year; and, if such loss be in excess of the income for that year, the excess shall be deducted from the net income for the next succeeding taxable year. *Its words are plain and free from ambiguity. Taken according to their natural import they mean that the taxpayer who sustained the loss is the one to whom the deduction shall be allowed. Had there been a purpose to depart from the general policy in that regard, and to make the right to the deduction transferable or available to others than the taxpayer who sustained the loss, it is but reasonable to believe that purpose would have been clearly expressed. And, as the section contains nothing which even approaches such an expression, it must be taken as not intended to make such a departure."* (Emphasis supplied.)

The taxpayers, neither in the District Court, nor here, have pointed to any provision in the Internal Revenue Code of 1939 which might support in the slightest degree their contention that as individual taxpayers they can avail themselves of the carry-back privilege enuring to the decedent's estate just because they are its heirs. They do assert equitable considerations—"fair * * * treatment of this estate—a widow and her three children"—but unfortunately for them the Supreme Court has specifically held in United States v. Olympic Radio & Television, Inc., 1955, 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024 and Deputy v. Du Pont, 1940, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 that equitable considerations cannot prevail in allowance of deductions. In Deputy v. Du Pont, it was said (308 U. S. at page 493, 60 S.Ct. at page 366):

"But allowance of deductions from gross income does not turn on general equitable considerations. It 'depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.'"

In the Olympic Radio & Television case the Court said (349 U.S. at page 236, 75 S.Ct. at page 736):

"This taxpayer argues the inequity of the results which would follow from our construction of the Code. But as we have said before, 'general equitable considerations' do not control the question of what deductions are permissible."

We can find nothing in the relevant sections of the 1939 Code which might even suggest that the heirs of an estate can avail themselves of the carry-back privilege of the estate.

Indeed Section 122(b) specifically points to the contrary. It provides that "the taxpayer" who sustains a net operating loss may have a carry-back. As was recently stated in Patten Fine Papers, Inc., v. Commissioner, 7 Cir., 1957, 249 F. 2d 776, 780: "* * * the allowance of the loss carry-over is a remedial exception to the established system" and "* * * the only taxpayer authorized to carry over a loss is the taxpayer who sustained the loss."[7]

6. 42 Stat. 227, 231.

7. Sections 23(g), 117(d), (e) (1) of the Internal Revenue Code of 1939 were involved in this case.

In Anderson v. Wilson, 1933, 289 U.S. 20, 53 S.Ct. 417, 77 L.Ed. 1004 it was held that a trust is an entity separate from its beneficiaries, and that, accordingly a loss resulting to the trust could not be deducted by the beneficiary in his personal tax return. In doing so the Court stated (289 U.S. at pages 26–27, 53 S.Ct. at page 420):

> "We hold that the trust, and not the taxpayer, has suffered the loss resulting from the sale of the Commercial Building, and it follows that where loss has not been suffered, there is none to be allowed. * * * In so ruling, we do not forget that the trust is an abstraction, and that the economic pinch is felt by men of flesh and blood. Even so, the law has seen fit to deal with this abstraction for income tax purposes as a separate existence, making its own return under the hand of the fiduciary and claiming and receiving its own appropriate deductions."[8]

In Jones v. Whittington, 10 Cir., 1952, 194 F.2d 812, at page 817, the status of the estate of a decedent under the federal revenue laws was succinctly stated as follows:

> "We conclude that under the Federal income tax laws *the estate of a decedent*, during the statutory period of administration, *is to be treated as a trust estate, having a separate existence,* charged with the duty of making its own tax return under the hand of the executor or administrator, reporting all income received, and *taking all allowable deductions,* including capital gains and capital losses occurring during the period of administration." (Emphasis supplied.)

It may here be observed that Sections 161 and 163, as well as Section 162, earlier cited, treat an estate as separate and distinct from its beneficiaries.

8. In United States v. Norton, 5 Cir., 1958, 250 F.2d 902, at page 905, it was said: "Deductions are statutory; they are not created by Treasury regulations or court

In three separate instances it has been held that beneficiaries of a trust are not entitled to the trust's net operating loss carry-back.

In Sargent v. United States (D.C.S.D. Calif.1955), 55–1 U.S.T.C. (CCH) par. 9424, a trust, in its fiduciary income tax return for 1945, reported income of $19,-828.82 which was distributable in that year to its beneficiary. The latter in turn included the sum in her taxable income in her 1945 tax return. During the year 1947 the trust suffered a net operating loss which it carried back to 1945 resulting in a re-computation of taxable income for the trust for that year in the sum of $3,929.82. The Tax Court held that the beneficiary could not recompute her 1945 tax return to reflect the trust's carry-back loss. It ruled that the beneficiary and the trust were "separate juridical persons"; "a net operating loss carry-back is available only to the taxpayer which sustains it;" "The tax due from the beneficiary of a trust is computed by the amount currently distributable to such beneficiary under the terms of the trust instrument" and "Modifications in the reportable income of a trust by virtue of the adjustments accruing to it in other years have no bearing on the tax liability of the trust beneficiary on account of her current distribution from such trust," citing Section 162 of the 1939 Code.

In Kearney v. United States, D.C.S.D. N.Y.1953, 116 F.Supp. 922 the same result was reached. There the trust sustained a net operating loss for 1944 which it carried back to 1943 and carried over to 1945. The life beneficiary sought to amend her individual returns for 1943 and 1945 to carry-back and carry-over the trust's 1944 operating loss. In holding that the beneficiary could not do so the Court stated (at pages 925–926):

> "The law is well settled that *a trust is deemed an entity separate and distinct from its beneficiaries*

fiat; * * * A trust is a taxpayer separate and apart from its beneficiary * * *"

*and that any operating loss suffered is that of the trust and not that of the beneficiary.* Such loss may be available to the trust as a deduction from any other taxable income it may have, or if it has none, such loss may be availed of by it on a carry over or carry back basis. *But it does not follow that the net income of the trust distributable to the plaintiff in any one year may be reduced by a carry over or carry back permitted the trust by § 23(s) of the Internal Revenue Code. The income payable to the beneficiary under the trust and the local law is not necessarily the same as the taxable income of the trust * * ** And if in any one year an operating loss was in fact sustained by the trust * * * this was not deductible from the distributable sum due to plaintiff in any subsequent year but was a charge against the corpus of the trust in the year of loss." (Emphasis supplied.)

In support of the last mentioned statement the Court cited Section 7 of the Uniform Principal and Income Tax Act, in effect in New York. Pennsylvania has enacted the same act—"Principal And Income Act of 1947", 20 P.S. § 3470.1 et seq. Section 3470.7 provides in part:

"* * * all losses in any one calendar year, after the income from such business for that year has been exhausted, shall fall upon principal."

Vreeland v. Commissioner, 1951, 16 T. C. 1041, 1049–1050, is in accord with the Sargent and Kearney cases.

In his painstaking and excellent opinion in the Court below Chief Judge Ganey pointed out that the position taken in the Sargent and Kearney cases is supported by the legislative history of the "net loss" and carry-back and carry-over provisions of the federal income tax laws, prior to and including the 1939 Code.

The legislative history of the Internal Revenue Code of 1954 also, as Chief Judge Ganey stated, is highly illuminative. Before the 1954 Code was enacted, Section 642(h) [9] was re-drafted to make it clear, as the Conference Report stated: "that the excess of deductions over gross income of the estate or trust to be allowed to the succeeding beneficiaries is only the excess for the last taxable year, i. e., the year of the termination, of the estate or trust." [10]

In an effort to avoid the impact of the foregoing considerations taxpayers have here presented, as earlier noted, the alternative contention that they were individual members of a de facto partnership engaged in the operation of the decedent's business and as such are entitled to offset the partnership loss in 1950 against its profits in fiscal 1949.

■ With respect to that contention, it could be disposed of on the ground that it cannot be advanced here as a basis of reversal since it was not presented to the District Court.[11] Putting aside that factor, the contention is utterly without merit. Section 3797(a) (2) of the 1939 Code,[12] in defining the term "partnership", specifically excludes an estate. Moreover, the record is devoid of evi-

---

9. 26 U.S.C. Sec. 642(h), 68A Stat. 215.

10. H.Conf.Rep. No. 2543, 83rd Cong., 2d Sess. p. 54 (3 U.S.Code Congressional & Administrative News (1954) pp. 5280, 5314).

11. Virginian R. Co. v. Mullens, 1926, 271 U.S. 220, 227–228, 46 S.Ct. 526, 70 L. Ed. 915.

12. "§ 3797. Definitions
"(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—
  *     *     *     *     *

"(2) Partnership and partner. The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization * * *" 26 U.S.C.1952 ed. Sec. 3797(a) (2), 53 Stat. 469.

dence that taxpayers, decedent's widow and three children, two of whom were minors, were engaged in the joint operation of decedent's road contracting and strip-coal mining business. The business was conducted by the widow and oldest son as administrators and in no other capacity.

What has already been said is dispositive of the taxpayers' contentions on this appeal.

We are constrained, however, to observe that apart from the foregoing, the taxpayers' position is utterly without merit under applicable Pennsylvania law which they have chosen to disregard.

Taxpayers' status with respect to the estate and its income is determined by Pennsylvania law. As was said in Morgan v. Commissioner, 1940, 309 U.S. 78, 80, rehearing denied 1940, 309 U.S. 626, 60 S.Ct. 424, 84 L.Ed. 1035, 60 S.Ct. 424, 426, 84 L.Ed. 585: "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed."

██ Applicable to the status of the taxpayers with respect to the estate and its income are these well-settled Pennsylvania principles:

The net income of an intestate decedent's estate is distributable to his next of kin.

Where an administrator continues to operate the intestate's business, and a

loss results, "the loss * * * falls upon him." [13]

Under the principles stated, the decedent's estate, as earlier noted, during its first fiscal year ended June 30, 1949, had no taxable income because its entire net income was distributable under Pennsylvania law to the heirs, and, under Section 162(b) of the 1939 Code it was allowed a deduction for income currently distributable; and the estate, during the second fiscal year ended June 30, 1950, for which it reported an operating loss in its fiduciary income tax return, actually had no loss, because under Pennsylvania law the loss fell upon the administrators and they were bound to save the estate harmless.

The administrators are truly in an anomalous position. In their separate identity as heirs (and taxpayers) they assert an operating loss to the estate with respect to which they are chargeable under Pennsylvania law. If they had reimbursed the estate for the operating loss as they were required to do the estate would, of course, have suffered no loss in 1950. Instead they seek, as heirs, a recomputation of their 1949 individual tax returns by reason of the estate's operating loss during 1950, and try to reap a financial benefit, at the government's expense, in a loss situation for which they are alone liable under Pennsylvania law.

For the reasons stated the judgment of the District Court will be affirmed.

13. In re Nagle's Estate, 1931, 305 Pa. 36, 39, 156 A. 309; In re Moran's Estate, 1918, 261 Pa. 269, 272, 104 A. 585, 586.

It may be noted that the Pennsylvania Fiduciaries Act of 1949, 20 P.S. § 320.-504, provides that the appropriate state court "may authorize the personal representative to continue any business of the decedent for the benefit of the estate", and in so doing prescribe by order the terms of such operation, and, "the extent of the liability * * * of the personal representative * * *" The Fiduciaries Act of 1949 by its terms became effective January 1, 1950, 20 P.S. § 320.105 and applies only to the estates of persons "dying on or after that day". Since the decedent in the instant case died July 16, 1948 the Fiduciaries Act of 1949 was inapplicable.