UNITED STATES ex rel. James CARRONO

v.

Mark S. RICHMOND, Warden Connecticut State Prison.

Civ. A. No. 7885.

United States District Court
D. Connecticut.
July 31, 1959.

James Carrono, petitioner, pro se.

J. JOSEPH SMITH, Chief Judge.

In a previous opinion in this matter, the court denied this petitioner's petition for a writ of habeas corpus for failure to affirmatively indicate that he had exhausted his state remedies in compliance with 28 U.S.C. § 2254. However, dismissal was without prejudice to petitioner's right to cure the defect by amendment. D.C., 177 F.Supp. 503.

Apparently attempting to take advantage of the door thus left open, petitioner, James J. Carrono, has submitted various documents to the court which he contends show an exhaustion of remedies. By way of review it might be noted at this point that petitioner is presently serving a life sentence in the Connecticut State Prison imposed in 1957 upon his plea of guilty to the crime of murder in the second degree, for which he had been in-

dicted. Among other claims, petitioner here challenges the plea of guilty to murder in the second degree as coerced, extracted from him while in a state of mental instability. The petition, as originally filed, indicated that the petitioner had applied for a writ of habeas corpus in the Superior Court of Connecticut, and that relief had been denied by that court. It was not stated whether or not petitioner had received a hearing in the Superior Court, and if so, what issues had been raised there. The amendment to the petition filed by petitioner indicates that he received a hearing before the Superior Court. A copy of the petition submitted to the Superior Court in that proceeding accompanied the amendment and reveals that a claim of coerced plea, among others, was presented to the Superior Court. Petitioner has also removed the obscurity surrounding his attempts, subsequent to the Superior Court hearing, to obtain review of that court's denial of the petition. It now appears that petitioner was possessed of some funds at the time he applied for habeas corpus in the Superior Court, and thus was able to pay the sixteen dollar filing fee required by Connecticut law. General Statutes of Connecticut, Rev.1958, Sec. 52–259. But he did not have sufficient resources to comply with the fee requirements for an appeal to the Supreme Court of Errors, General Statutes, Sections 52–259, 52–269, and also provide the bond required on all appeals. Connecticut Practice Book (1951 ed.) Sec. 379. Consequently his attempts to appeal the adverse decision received in the Superior Court were unavailing. Neither in the original petition nor in the amendment thereto is anything alleged concerning any attempt by petitioner to obtain a writ of certiorari from the Supreme Court of the United States so that that Court might review the state court's denial of habeas corpus.

A novel question thus arises in connection with this petitioner's application for a writ of habeas corpus in this federal district court. The usual situation in this court's experience is that of a state prisoner, without funds, who cannot take advantage of any state remedy because of Connecticut's insistence on the payment of filing fees. In such situations, there being no state remedy available at all and no state court judgment to review, no question arises as to the effect of a failure to petition the Supreme Court for certiorari. This court has construed Jennings v. State of Illinois, 1951, 342 U.S. 104, 111, 72 S.Ct. 123, 96 L.Ed. 119 as allowing prisoners so situated to proceed into the federal court without applying for certiorari. United States ex rel. Martin v. Walker, D.C.D.Conn.1952, 111 F.Supp. 455, affirmed 2 Cir., 1953, 203 F.2d 563. But in the instant case petitioner has received a judgment from a state court; he has availed himself of a state remedy. Before he can proceed in this federal district court the effect of 28 U.S.C. § 2254 on this situation must be examined. The case creating the problem is Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761, wherein the Supreme Court held that "ordinarily" a state prisoner should not be considered to have exhausted the remedies available in the courts of the state until he had petitioned that Court for certiorari and the petition had been denied.

An examination of the jurisdiction of the Supreme Court of the United States to review state court judgments is indicated as a first step.

28 U.S.C. § 1257 begins:

"Final judgments or decrees rendered by *the highest court of a State in which a decision could be had,* may be reviewed by the Supreme Court as follows: * * *" (Emphasis supplied.)

■ Whether the method of review employed be that of appeal or writ of certiorari, it must first appear that the judgment is final and that it has emanated from the "highest court * * * in which a *decision could be had.*" The language employed has been construed as warranting review by the Supreme Court of judgments of state courts which are situated relatively low in local judicial

hierarchy. It has been held that the writ of certiorari from the Supreme Court is properly addressed to an intermediate appellate court, rather than the higher appellate court of the state, when review by the latter of the former's decisions is discretionary, even where in declining review the higher court referred to the merits. American Railway Express Co. v. Levee, 1923, 263 U.S. 19, 44 S.Ct. 11, 68 L.Ed. 140. In that case the petitioner had received an adverse decision in a civil case in a Louisiana trial court; an appeal to an intermediate appellate court, the Court of Appeal, brought an affirmance. The Supreme Court of Louisiana refused to issue a writ of certiorari to bring up the case for review "for the reason that the judgment is correct." Mr. Justice Holmes stated that the United States Supreme Court's writ of certiorari was properly addressed to the Court of Appeal rather than the Supreme Court of Louisiana. Although it was necessary for petitioner to invoke the jurisdiction of the Supreme Court of Louisiana, nevertheless, when it was declined, the Court of Appeal was shown to be "the highest court of the State in which a decision could be had." Accordingly, review of the intermediate court's judgment by the Supreme Court of the United States was permitted under the then existing statute, a predecessor of Section 1257. In Virginian Railway Co. v. Mullens, 1926, 271 U.S. 220, 46 S.Ct. 526, 70 L.Ed. 915, a civil action in tort, the judgment of a trial court was reviewed by the Supreme Court of the United States on writ of certiorari, the state's Supreme Court of Appeals having previously declined to review the judgment of the trial court. Similar treatment of an appeal rather than review on certiorari was afforded by the Court as recently as 1954. Michigan-Wisconsin Pipe Line Co. v. Calvert, 1954, 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583.

■ It appears then, that when a higher state court can, under the constitution or laws of the state, decline to review questions presented to lower courts and adjudicated therein, and has in fact so declined, such lower court is, ipso facto, the "highest court * * * in which a decision could be had."

■ The same result follows where the higher court (higher in the hierarchal sense) is, by constitution or statute, without power to review the decision of the lower court. In Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, the Supreme Court held that the issuance of a writ of certiorari to a judge of the Court of Appeals of Maryland was proper because in acting on petitioner's application to him for a writ of habeas corpus, he had acted as a court, and his judgment, being that of a "court" was also a judgment of the "highest court [of the State] in which a decision could be had" for the reason that an order of a Maryland judge in a habeas corpus case, whatever the court to which he belongs, was not reviewable by any other court of Maryland, except in specific instances not there applicable. 316 U.S. at page 460, 62 S.Ct. 1255. See also White v. Ragen, 1945, 324 U.S. 760, 767, footnote 3, 65 S.Ct. 978, 89 L.Ed. 1348.

A writ of certiorari was addressed to the County Court of Kings County, New York, in Canizio v. People of State of New York, 1946, 327 U.S. 82, 66 S.Ct. 452, 90 L.Ed. 545, that court having denied petitioner's motion for writ of error coram nobis, such decision being evidently nonappealable to any higher court under then existing New York practice. 327 U.S. at page 85, 66 S.Ct. 452. In Woods v. Nierstheimer, 1946, 328 U.S. 211, 66 S.Ct. 996, 90 L.Ed. 1177, writs were directed to the Circuit Court of Randolph County, Illinois, and the Criminal Court of Cook County, Illinois, because Illinois did not provide for appellate review of an order denying a petition for a writ of habeas corpus. See also Marino v. Ragen, 1947, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170; Tucker v. State of Texas, 1946, 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274; Largent v. State of Texas, 1943, 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873.

In summary then, it appears that the Supreme Court of the United States has

the authority under 28 U.S.C. § 1257 to review either by appeal or on writ of certiorari final judgments of lower state courts where relatively higher state courts have either declined to review those judgments or are without power to review them.

Turning now to the situation presented by the current laws of Connecticut we have the following problem.

■■ As has been said, Darr v. Burford, supra, and a line of preceding cases require that a state prisoner desiring to obtain a discharge on writ of habeas corpus must "ordinarily" show an exhaustion of state remedies, up to and including a petition for certiorari in the Supreme Court. Carrono is such a prisoner. He began his attempt to exhaust his state remedies by applying for a writ of habeas corpus in the Superior Court of Connecticut. The sixteen dollar filing fee required by Connecticut law was within his means, and thus this remedy was available to him. It was exhausted when his petition was denied by the Superior Court. The next step to be taken in the Connecticut remedial structure was an appeal of this decision to the Supreme Court of Errors. That court has jurisdiction to hear such appeals. But that court has also held that it has no power to waive payment of the statutory entry fee ($16) and record fee ($25) needed for an appeal, State v. Reddick, 1953, 139 Conn. 398, 94 A.2d 613; State v. Zukauskas, 1945, 132 Conn. 450, 451, footnote 1, 45 A.2d 289, and has insisted on the posting of a bond of $150. Conn. Practice Book, 1951 ed., Sec. 379. Thus, this remedy cannot fairly be considered "available" to a state prisoner unless he has approximately $200 at his disposal, and it could hardly be held that a prisoner who had the $16 needed for instituting an original habeas corpus proceeding in the Superior Court, but who lacked the $191 needed for an appeal, would be precluded from applying to a federal district court for a writ of habeas corpus because of failure to exhaust this particular remedy. The remedy of an appeal to the Supreme Court of Errors is clearly not "available" and failure to obtain review by this highest court of Connecticut should not place the prisoner within the ambit of the "exhaustion" rule. The question remains however as to whether a petition for certiorari is still necessary despite the unavailability of review in the highest state court—again meaning "highest" in the hierarchal sense. For in the state of affairs present in petitioner's case, the Superior Court, whose judgment dismissing his petition was doubtless a "final" one, is, for all practical purposes, "the highest court * * * (of Connecticut) in which a decision could be had." However, this is not so because of any discretionary refusal to review or the lack of any power to review in the Supreme Court of Errors. The Superior Court has become "the highest court * * * in which a decision could be had" because of the petitioner's indigency, because he does not have the means to obtain review in the Supreme Court of Errors. Review in that court thus becomes a remedy that petitioner is unable to obtain since, under its own rulings, that court is powerless to act in a case until the fees are paid.

The history of certiorari jurisdiction previously noted, coupled with the present attitude of the Supreme Court toward state policies which effectively withhold from indigent persons convicted of crime one method of post-conviction redress, i. e. direct review by appeal, which method of redress is freely available to persons similarly convicted but possessed of sufficient means to employ same, Griffin v. People of State of Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Eskridge v. Washington Board, 1958, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269; Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209, fairly support the conclusion that if a timely petition for a writ of certiorari to be directed to the Superior Court of Connecticut had been made by Carrono, the Supreme Court would not have denied such a petition for jurisdictional reasons under 28 U.S.C. § 1257, but that any denial would have been based on the usual discretionary

considerations, such as lack of a significant federal question. See Supreme Court Rule 38(5) (a), 28 U.S.C.; 28 U.S.C. § 2071. In other words it is believed that in an appropriate case, the Supreme Court would grant certiorari directed to the Superior Court of Connecticut to review a decision of that court in a habeas corpus case, where review of that decision in the Connecticut Supreme Court of Errors was precluded by the petitioner's indigency and Connecticut's unwavering policy of requiring the payment of certain sums before an appeal can be perfected. Whether the lack of a judgment of the state's highest reviewing court be caused by a discretionary refusal to act, or an inability to act because of lack of authority, or by a mandatory refusal to act because of non-compliance with financial requirements, the effect is the same: no judgment is obtainable in that state from any court higher than the one or ones that have already acted. The presence of this condition appears to be the uniform basis for Supreme Court action in the cases previously discussed. When related to the fact that further action in the state court hierarchy is prevented only by the petitioner's indigency, the conclusion heretofore reached seems inescapable. As to this latter factor, petitioner's indigency, it is true that we are concerned here with a civil action, habeas corpus. And it is equally true that the cases to date discussing state policies towards indigents have dealt with denial of direct appellate review of criminal convictions. But the same considerations would seem to apply to appellate review of decisions in proceedings collaterally attacking criminal convictions, especially since the main thrust of Griffin, Eskridge, and Burns is the denial of equal protection. Carried to its logical limits the philosophy expressed in those cases supports the contention that indigents should have opportunities equal to those of non-indigents to collaterally attack convictions in a state which makes procedures for such attacks available.

A conclusion that the Supreme Court of the United States would be free to grant certiorari in such a case as petitioner's, if so disposed, does not end the problem here. Petitioner did not make a timely application for certiorari. Darr v. Burford, supra, "ordinarily" requires a denial of certiorari after the state courts' denial of relief in collateral proceedings. 339 U.S. at page 208, 70 S.Ct. 587. It is clear that an "extraordinary" situation, calling for a relaxation of this strict exhaustion rule, is presented when the petitioner is able to show that circumstances of "peculiar urgency" exist, "exceptional circumstances" which require "prompt federal intervention." 339 U.S. at page 219, 70 S.Ct. at page 598. For an example of one type of "exceptional circumstances" and a contrariety of views with regard thereto see Collins v. Frisbie, 6 Cir., 1951, 189 F.2d 464, footnote 1 and dissenting opinion of Miller, J., affirmed 1952, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541. Furthermore, ordinarily a petitioner for federal habeas corpus must do more than show that the time in which he could have appealed to a higher state court has passed in order to empower a district court to issue the writ. Brown v. Allen, 1953, 344 U.S. 443, 487, 73 S.Ct. 437, 97 L.Ed. 469. The same is true of review on writ of certiorari in the Supreme Court of the United States since it is now settled that "exhaustion of state remedies" includes an attempt to obtain that writ in that Court. Darr v. Burford, 339 U.S. at page 212, 70 S.Ct. at page 595. In other words a state prisoner cannot arrange an exhaustion of remedies merely by allowing time to put them beyond his reach and still expect a remedy in habeas corpus in the federal court. Insofar as the appeal to the Supreme Court of Errors was concerned, petitioner obviously did everything he could to take timely advantage of this state remedy. Only his poverty barred him from access to it. But should petitioner be barred from federal habeas corpus, at least at this juncture, because he failed to make a timely application to

the Supreme Court for certiorari? The Court of Appeals for the Second Circuit has held that where the only state remedies are inaccessible to a prisoner because of his poverty, his failure to pursue those remedies does not bar him from applying to the federal court for relief. United States ex rel. Embree v. Cummings, 2 Cir., 1956, 233 F.2d 188. But this is not such a case. Embree's case was the typical Connecticut prisoner case where, due to lack of funds, he was unable to present his claims to the Superior Court. This petitioner did. And there appears to be no reason why any federal question presented by petitioner to the Superior Court should not have been first offered to the Supreme Court of the United States for review, rather than to the lowest federal court. Indeed, in this sensitive area of federal-state relations, comity would seem to require that the highest federal court be given the opportunity to review state court decisions of federal questions before the lowest of federal courts. Brown v. Allen, supra, 344 U.S. at page 451, footnote 5, 73 S.Ct. 437. Carrono's petition discloses no circumstances of peculiar urgency which would have excused him from the necessity of a timely application for certiorari had he sought habeas corpus in this court during the 90-day period after the Superior Court decision in which he could have seasonably petitioned for certiorari. 28 U.S.C. § 2101(c). That period having now elapsed without any attempt therein by Carrono to make use of this clearly available remedy, he may not now be allowed to proceed in this district court. Brown v. Allen, supra, 344 U.S. at page 487, 73 S.Ct. 437. The burden is on the petitioner in habeas corpus proceedings to convince the federal court that he has exhausted his state remedies. United States ex rel. Cuomo v. Fay, 2 Cir., 1958, 257 F.2d 438.

The result suggested may seem unduly harsh since it is highly probable that Carrono, a layman of limited education, never realized that the Supreme Court could grant certiorari to review a decision of the Superior Court of Connecticut. But there would appear to be nothing to prevent Carrono from again petitioning the Superior Court for a writ of habeas corpus. A denial of that petition, either after hearing or on the ground that the issues had been previously decided, would provide petitioner with a basis for another attempt at persuading the Supreme Court of Errors to review the decision below despite his lack of funds. Failing a favorable result there, the ground work would be sufficiently laid for a petition for certiorari in the Supreme Court of the United States. Only after denial of such a petition would petitioner be allowed to proceed here, in the absence of "special circumstances".

If Carrono no longer has the fee needed for filing a petition for writ of habeas corpus in the Superior Court, then he is free to petition this court for a writ, requesting, of course, permission to proceed in forma pauperis. Recent correspondence from Carrono indicates that he is dispossessing himself of all available funds by transferring same to a relative so that he may be considered an indigent person for purposes of any future actions he might attempt to institute in this court. Although not in issue here, we think it not inappropriate to observe at this time that this court could never recognize so facile a solution to petitioner's problems. Were so simple a procedure all that were needed, requests for permission to institute litigation in forma pauperis would surely spring forth from every quarter as a result of the enrichment of an already fertile field that would be supplied by recognition of such a procedure. 28 U.S.C. § 1915 obviously does not countenance such an artful device, but was intended solely for the use of persons whose indigency was not "created" for purposes of suit.

The petition for a writ of habeas corpus must be denied.

It is so ordered.